X FILED ____ LODGED
____ RECEIVED ____ COPY

NOV 0 5 2008

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ Z DEPUTY

Randy J. McClanahan
Texas State Bar No. 13391500
randy@mmellp.com
Michael D. Myers
Texas State Bar No. 00791331
mike@mmellp.com
Robert H. Espey, II
Texas State Bar No. 24007163
bob@mmellp.com
MCCLANAHAN • MYERS • ESPEY, L.L.P.
700 Louisiana Street, Suite 4100
Houston, TX 77002
Tel: (713) 223-2936
Fax: (713) 223-3664

Attorneys for American Traffic Solutions, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Traffic Solutions, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Redflex Traffic Systems, Inc.; Karen Finley; and Aaron M. Rosenberg, Ph.D., <br><br> Defendants. | Case No. **C V '08 02051 PHX** <br><br> **PLAINTIFF'S ORIGINAL COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### A. Parties

1.      Plaintiff, American Traffic Solutions, Inc. ("ATS") is a Kansas corporation with its principal place of business in Scottsdale, Arizona.

2.      Upon information and belief, Defendant Redflex Traffic Systems, Inc. ("Redflex") is a foreign corporation with its principal place of business in Phoenix, Arizona.    Redflex may be served with process by serving its registered agent, National Registered Agents, Inc., 638 N. 5th Avenue, Phoenix, AZ 85003.  Redflex is wholly owned by an Australian entity.

3.     Karen Finley ("Finley"), President and CEO of Redflex, is an individual.  She may be served with process at 23751 N. 23rd. Avenue, Suite 150, Phoenix, AZ 85085-1854.

4.     Aaron M. Rosenberg, Ph.D. ("Rosenberg"), Executive Vice President of Redflex, is an individual.  He may be served with process at 23751 N. 23rd. Avenue, Suite 150, Phoenix, AZ 85085-1854.

5.     Redflex, Finley and Rosenberg are collectively referred to as "Defendants" or "defendants."

### B. Jurisdiction

6.     The court has jurisdiction over the lawsuit under 28 U.S.C. § 1338 because the suit arises under the Lanham Act, 15 U.S.C. § 1125(a).

### C. Venue

7.     Venue is proper in this district under 28 U.S.C. § 1391 because the defendants reside and have their principal place of business in this district.  Venue is also proper in this district because a substantial part of the events and omissions that give rise to the claims occurred in this district.

### D. Background Facts

8.     ATS provides equipment and services for photo traffic (speed and red light) and toll enforcement.  Founded in 1992, ATS, which is headquartered in Scottsdale, Arizona, employs almost 500 people.  It has approximately 130 contracts in 19 states and the District of Columbia, with over 800 cameras operating nationwide.

9.     Redflex Holdings Limited, sometimes referred to as The Redflex Holdings Group, is an Australian entity.  It produces and sells traffic enforcement products and services.  Its stock is traded on the Australian Stock Exchange.  It owns Redflex.

10.   Redflex has photo speed programs in many cities throughout the U.S. Redflex and ATS are direct competitors.  Both distribute photo speed programs and equipment in interstate commerce.

11.   Redflex advertises its speed program products and services extensively to government, police and traffic departments and to the public across the United States.  It solicits business from customers and potential customers of ATS through direct and indirect sales representatives, at trade shows and through various other media, including activities involving the International Association of Chiefs of Police ("IACP").  For example, Exhibit A is a two page brochure found on the Internet regarding one of its products, REDFLEXspeed 2000M®, a mobile speed violation monitoring system that is offered in two formats, self-contained vehicle-mounted and portable tripod.

### E.  FCC Approval Required

12.   Many of the speed enforcement programs provided by ATS and Redflex utilize across-the-road radar detection.  The radar units provided by ATS and Redflex use radio waves and bandwidth that are regulated by the Federal Communications Commission ("FCC").  Before any radar system can be used in a radar-based speed enforcement system, it must first receive a Grant of Authorization and be Type Accepted by the FCC.  Licensing of these radar transmitters is generally governed by FCC Part 15 or Part 90 regarding licensing of radio location transmitters.

13.   It is illegal to market, offer or supply any radar unit or component before it is certified and Type Accepted by the FCC.  To do so also is to compete unfairly.

1
2

## F.  Redflex Radar Units

3      14.     Redflex acquired the "Public Safety Business" from American Traffic
4  Systems, Inc. ("ATSI") in July 1999.  The acquisition included several contracts that
5  were operating ATSI film-based radar speed cameras with FCC-Type Accepted radar
6  antennas.    The transferred contracts that used the ATSI radar systems included
7  Scottsdale, AZ, Paradise Valley, AZ and Ft. Collins, CO.  The radar equipment was
8  included in the asset sale.

9      15.     Redflex developed a new, all-digital radar speed camera called the
10  REDFLEXspeed 2000M®, which system used the DRS-3 34.4GHz radar procured
11  from a German company, Robot Visual Systems GmbH ("Robot").  At that time,
12  Robot offered two radar components, the DRS-2 (a photo of which is attached as
13  exhibit B) and the DRS-3 (a photo of which is attached as exhibit C).  DRS-2 had
14  been previously Type Accepted by the FCC for other users, but the DRS-3 was never
15  Certified or Type Accepted by the FCC.  Despite its lack of FCC approval or Grant of
16  Authorization, Redflex knowingly and illegally used the DRS-3 in many
17  REDFLEXspeed® systems that were used to unfairly compete with ATS.

18      16.     Upon information and belief, Robot discontinued the DRS-3 and
19  advised Redflex that they would no longer service the units Redflex had procured.
20  Redflex began working with AGD Systems, Ltd. ("AGD"), a British company, to
21  develop a new radar unit called the AGD-340 which was intended as a replacement
22  radar unit to be used to compete with ATS for photo enforcement.  Redflex thereafter
23  started using the AGD-340, a photo of which is attached as exhibit D, in its mobile
24  radar units.  As with the DRS-3, Redflex knew the AGD-340 was not FCC-Type
25  Accepted and certified.  Nonetheless, Redflex continued to knowingly deliver those
26  radar units to new contracts and to illegally and improperly compete with ATS using
27  non-FCC Type accepted radar as they had done with the DRS-3.

28

17.     During all relevant times, Redflex advertised, promoted, displayed at trade shows, offered and delivered the unlawful and non-FCC certified DRS-3 and AGD-340 radars in direct competition with ATS.

## G. The Arizona Contract

18.     In 2007, Redflex was awarded a contract by the Arizona Department of Public Safety ("DPS") for a pilot program to provide DPS with two mobile photo traffic enforcement units.   These units used "across-the-road" radar for speed monitoring and camera enforcement.   In bidding for the pilot program, Redflex represented that its sports-utility vehicles contained REDFLEXspeed 2000M® mobile units that were approved by the IACP. The IACP certification requires that if any of the component parts of the certified mobile units are changed, the certification is no longer valid and must be obtained again with the changed component part.

19.     In bidding for the Arizona pilot program, Redflex deceptively included pictures of the radar system that it purported would be used in its REDFLEXspeed 2000M®. It was represented, through photos included in the Redflex bid documents, to be the Robot/Multanova 6F DSR-2, which is cone-shaped and was thought to be FCC Type Accepted.   The Robot radar was a part of the mobile speed camera system that Redflex represented was approved by the IACP.

20.     In fact, the radar referenced was actually the "cone shaped" Multanova DRS-3 unit.   The DRS-2 looks almost identical to a casual observer.   Redflex was aware that the DRS-3 was not FCC-certified.   Redflex knowingly masqueraded the DRS-3 as the DRS-2, which had previously been FCC-Type Accepted in the 1980's,

1
2
3

for which Grants of Authorizations were given by the FCC to companies other than Redflex.

4    21.    Redflex was awarded the Arizona pilot project.  After it obtained the
5  award, Redflex provided DPS with two mobile speed photo enforcement units, which
6  DPS then used at various locations in Arizona.  Contrary to its representations,
7  however, the two units did not use FCC-Accepted radar, as required by the FCC.

8    22.    Upon information and belief, the two Redflex mobile units actually
9  provided under the pilot program used the AGD-340, which is rectangular, not
10  conical, in shape.  By letter dated August 7, 2008 to the Arizona Department of Public
11  Safety, Finley admitted that the AGD-340 radars were not FCC-certified, and upon
12  information and belief, they were also not certified by the IACP.  In addition to
13  misrepresenting the certifications of the radar in the Redflex units, it was a violation
14  of federal law for Redflex to provide non-FCC Accepted radar for use in such speed
15  detection and enforcement devices.

16    23.    Redflex used both the DRS-3 and AGD-340 systems to compete with
17  ATS knowing that neither system was FCC-approved.

18    24.    On information and belief, neither the DRS-3 nor the AGD-340 could
19  be legally shipped into the United States.  Redflex disguised the radar it used as part
20  of an allegedly, but falsely, approved "Australian system" so that it could be imported
21  into the United States without discovery and seizure by U. S. Customs.  This alleged
22  "Australian system" was not a lawful system, however, because critical components –
23  the DRS-3 and the AGD-340 – were not approved or certified by the FCC.

24    25.    On approximately January 11, 2008, as amended February 21, 2008,
25  Arizona DPS issued a Notice of Request for Proposal, Solicitation No. L8-022,
26  entitled "Statewide Traffic Photo/Speed & Intersection Enforcement Systems, Mobile
27  and Fixed" ("RFP").  This was for the first statewide speeding photo enforcement
28  program in the United States.  The RFP called upon bidders to submit proposals to

*Plaintiff's Original Complaint, page 6*

1   provide both fixed and mobile photo/speed enforcement systems throughout Arizona.
2   One of the component parts for these systems is a radio transmitter locator system;
3   i.e., a radar unit.  Such systems must be certified and Type Accepted by the FCC to be
4   operated in the United States.

5       26.    On approximately March 10, 2008, both ATS and Redflex submitted
6   proposals to perform work under the RFP.  Both offers were open to public
7   inspection. As with the Pilot Program, Redflex again represented that its mobile units
8   were approved by the IACP. And once again, Redflex's proposal included a photo of
9   a German radar system that was purported to be FCC Type Accepted, and Redflex
10  falsely advertised and promoted IACP certification of its system.

11      27.    Upon information and belief, Redflex misrepresented its radar systems
12  in both the pilot project and the Arizona statewide RFP.  It did not provide the radar
13  systems that it bid, and the radar systems that it provided were not IACP approved,
14  FCC Acceptance Tested or legal to use in the United States.

15      28.    The only other bidder for the Arizona contract was Nestor Traffic
16  Systems, whose bid was rejected by Arizona DPS.  Thus, but for Redflex's
17  misrepresentations and unfair competition, both the pilot project and the statewide
18  contract would have been awarded to ATS.

19      29.    Redflex made material misrepresentations of fact to DPS regarding the
20  equipment it intended to use in performing the Contract, and Redflex intended to use
21  an illegal radar system that had not been certified and licensed by the FCC in
22  violation of federal law.  This made Redflex a non-responsive bidder under the RFP's
23  requirements.

24      30.    On the other hand, ATS's proposal was responsive and responsible and
25  but for Redflex's misrepresented and illegal bid, ATS's proposal would have been
26  awarded the contract.

27      31.    In its Proposal, Redflex provided, among other things, a list of
28  equipment that it represented would meet the terms of the RFP. Redflex warranted,

among other things, that its materials were of a quality to pass without objection in the trade, fit for the intended purpose for which they were used, within the variations permitted by the Contract, and conformed to the written promises or affirmations made by Redflex.  Redflex further warranted and represented that the equipment it supplied to the State fully conformed to all the requirements of the Contract, all representations made by Redflex, and would be fit for all purposes and uses required by the Contract.  Redflex represented and warranted that it would comply with all federal laws regarding the materials and services required under the Contract. Redflex represented that its equipment met the requirements of a fully functional Photo Enforcement System.

32.     The representations made by Redflex in connection with the RFP were false. Among other things, Redflex provided equipment that did not meet the terms of the RFP and materials that did not pass without objection in the trade, were not fit for their intended purpose, did not conform to all the requirements of the Contract, and did not comply with all federal laws regarding the materials and services required under the Contract.  The Redflex equipment did not meet the requirements of a fully functional Photo Enforcement System.

33.     Redflex falsely represented that the mobile speed systems it would provide under the Contract were sufficient to document for court purposes a person and vehicle exceeding the speed limit.

34.     Redflex falsely represented that the mobile speed systems would operate properly, including legally.

35.     Redflex falsely represented that it met the requirements called out for in the ADOT Technical Evaluation of Photo Speed Enforcement for Freeways report.

## H.  Knowing and Intentional Conduct

36.     Defendants operated the illegal radar units intentionally, willfully, deliberately and knowingly.  For example, based on information and belief, after shipments were stopped by U.S. Customs, Redflex is believed to have falsely stated to

1   Customs that the non-FCC approved radar was part of an "approved system" in order
2   to prevent the illegal radar from being seized by Customs and denied entry into the
3   United States.

4          37.    Even after being caught using illegal radar in Arizona and admitting that
5   it was not approved by the FCC, Redflex continued to use identical, and other, non-
6   approved radar in other locations throughout the United States.

7                            **I. Other Locations**

8          38.    Upon information and belief, Redflex has marketed, sold and used
9   uncertified and unapproved DRS-3 and AGD-340 radar, in unfair competition against
10  ATS, in at least the following locations:  Pinal County, AZ; Prescott Valley, AZ; Star
11  Valley, AZ; Tempe, AZ; Davenport, IA; Gretna, LA; Lafayette, LA; Alexandria, LA;
12  Livingston Parish, LA; Sulphur, LA; Zachary, LA; Baker, LA; Albuquerque, NM;
13  Las Cruces, NM; Chilicothe, OH; Northwood, OH; Toledo, OH; Trolwood, OH; West
14  Carrollton, OH; Hamilton, OH; Beaverton, OR; Medford, OR; Oak Ridge, TN;
15  Jonesborough, TN; Selmer, TN; Auburn, WA; Bremerton, WA; Burien, WA;
16  Lakewood, WA; Sea Tac, WA; Tacoma, WA; and Vancouver, WA.

17         39.    In addition, based on information and belief, Redflex has, in unfair
18  competition with ATS, illegally imported unlicensed radiolocation devices.  Upon
19  information and belief, anyone who imports a device that is unlicensed by the FCC is
20  required to apply for a Temporary Grant of Authorization for a limited quantity of
21  devices, and only for limited purposes such as testing.  This requires a Declaration
22  and submission of FCC Form 740.  According to Form 740, making a false
23  declaration (or failure to file a FCC Form 740) subjects the Importer to fines and
24  imprisonment.

25         40.    Redflex has, in unfair competition with ATS, marketed and operated
26  unlawful radars in the United States, without labels or markings showing a Federal
27  Communications Commission Identification Number ("FCC ID").

28

41.   Upon information and belief, Redflex falsified documents used to certify speed camera deployments in Lafayette, Louisiana.

### J. Defendant Finley

42.   Finley represented that using uncertified radar units was an "honest mistake."  Fisher, "State's photo radar vans back citing speeders," East Valley – Scottsdale Tribune, August 15, 2008.

43.   Upon information and belief, Finley directed Redflex to make false representations, and made false representations herself.

### K. Defendant Rosenberg

44.   Upon information and belief, Rosenberg masterminded a scheme to deceive the users of Redflex radar and to avoid compliance with the FCC and importation laws and regulations.

45.   Upon information and belief, Rosenberg directed Redflex to make false representations, and made false representations himself.

### L.   Count 1 – False Representations under the Lanham Act

46.   Defendants made false representations under the Lanham Act, 15 U.S.C. § 1125(a). In particular, they made (1) false or misleading statements of fact about a product, (2) the statements were made in commercial advertisements, (3) the statements actually deceived or had the tendency to deceive a substantial segment of their audience, (4) the deceptions were material, in that they were likely to influence purchasing decisions, (5) the defendants caused the statement to enter interstate commerce, and (6) the plaintiff has been or is likely to be injured as a result of the

1  statements, either by direct loss of sales or by a lessening of the goodwill associated

2  with its products.

3

4       47.    The statements made by the defendants were literally false, either on

5  their face or by necessary implication.

6       48.    Defendants advertised to the relevant public that Redflex was in

7  compliance with all pertinent laws and regulations.

8

9              **M.  Count 3 - Tortious Interference with Business Relationship and**
               **Expectancy**

10

11      49.    ATS asserts a claim for tortious interference with business relationship

12  and expectancy. (1) There existed valid business relationships or expectancies

13  between ATS and the governmental entities that contracted for Redflex's illegal

14  radars, (2) Redflex knew of those relationships or expectancies, (3) Redflex

15  intentionally and improperly interfered causing a breach of those relationships or

16  expectancies, and (4) damage to ATS resulted.

17                          **N.  Count 2 - Unjust enrichment**

18      50.    Alternatively, plaintiff is entitled to recover against Redflex for unjust

19  enrichment under Arizona law.  Redflex was enriched, to the impoverishment of ATS,

20  there was a connection between the enrichment and the impoverishment and there was

21  no justification for the enrichment and impoverishment.

22                                 **O.  Damages**

23      51.    As with the Arizona RFP, the contracts into which Redflex entered

24  based upon false representations typically called for the provision of both mobile and

25  fixed photo traffic speed and red light enforcement camera systems.  Because those

26  contracts required Redflex to comply with applicable federal laws, Redflex could not

27  have been awarded the contracts.  Those contracts would have been awarded to ATS.

28

52.     Each of the contracts into which Redflex entered based upon false representations would have otherwise been awarded to ATS.

53.     Until August 11, 2008, there were only two active vendors with valid FCC Grants of Authorization for camera radar systems.  These were ATS and ACS (Gatso24 radar).  Another radar, the Multanova DRS-2 radar unit was certified in the mid and late 1980's.  Three companies were given Grants of Authorization for the same radar unit (Multanova DRS-2 radar).  None of these companies currently exist and the Grants of Authorization were not transferred or re-authorized to any other company.

54.     One other company called Nestor Traffic Systems operates a laser based speed camera system, not subject to FCC requirements, which has been sold to and/or operated on behalf of a few small cities in the United States but would have been non-responsive for the procurements awarded to Redflex.

55.     Every RFP which Redflex bid with non-FCC approved equipment required that the bid be responsive to the RFP.  Each Redflex bid that included non-FCC Type Accepted equipment was non-responsive and but for the misrepresentation would have been rejected, thus requiring the contract to be awarded to one of the other responsive bidders.  In each case, ATS's bid would have been accepted.  Thus, the misrepresentations and unfair competition by Redflex directly and proximately caused ATS to be damaged by the loss of each such contract.

56.     The Arizona Statewide contract gives Redflex up to $28.75 for every photo radar citation that is paid.  Arizona legislation assumed that the state would pay out in excess of $20 million to the successful bidder over a twelve-month period for implementation and a share of revenue from speeding citations for up to five years.

57.     Upon information and belief, damages are substantial and may approach $100 million.

58.     As a direct and proximate result of Redflex's conduct, ATS seeks the following damages:

a.      Actual damages.

b.      Lost profits.

c.      Disgorgement of all profits obtained by Redflex through its use of non-FCC certified radar.

d.      Statutory damages.

e.      Treble damages.

f.      Attorneys' Fees

## P.     Jury Demand

58.     ATS respectfully demands a jury trial on all issues.

## Q. Prayer

59.     For these reasons, ATS asks for judgment against Redflex for the following:

a.      ATS's actual damages, to include ATS's lost profits, disgorgement of profits by Redflex, and any other damages allowed by law.

b.      Treble damages.

c.      Prejudgment and postjudgment interest, as authorized by law.

d.      Attorneys' fees.

e.      Costs.

f.      All other relief the court deems appropriate.

1    DATED this 4ᵗʰ day of November, 2008.

2

3                                    MCCLANAHAN • MYERS • ESPEY, L.L.P.

4

5

6    By _____

7    Randy J. McClanahan
     Texas State Bar No. 13391500
8    Michael D. Myers
     Texas State Bar No. 00791331
9    Robert H. Espey, II
     Texas State Bar No. 24007163
10   700 Louisiana Street, Suite 4100
11   Houston, TX 77010
     Tel: (713) 223-2005
12   Fax: (713) 223-3664

13                                   *Attorneys for American Traffic Solutions, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28