**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Traffic Solutions, Inc., | No. CV-08-02051-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Redflex Traffic Systems, Inc., et al., | |
| Defendants. | |

The court has before it defendant Redflex Traffic Systems, Inc.'s motion for summary judgment (doc. 108), plaintiff American Traffic Solutions, Inc.'s response (doc. 205), and defendant's reply (doc. 201). We also have before us defendant's motion for leave to file demonstrative aids and supplemental exhibits (doc. 202), plaintiff's response (doc. 242), and defendant's reply (doc. 243).

As an initial matter, defendant moves for leave to file two charts that compare the parties' statements of fact and reference nineteen supplemental exhibits. Plaintiff contends that consideration of these documents would be prejudicial. Perhaps realizing that the parties' aggressive use of deposition testimony and insubstantial evidentiary objections did not result in manageable statements of fact, defendant suggests that its "demonstrative aids" would assist the court. Because additional statements of fact would not be helpful, we deny defendant's motion for leave.

**I. Background**

Plaintiff competes with defendant for contracts with state and local governmental entities to provide photographic traffic enforcement services. Some entities award these contracts after soliciting proposals, while others directly negotiate agreements without competitive bidding.

Both parties offer speed enforcement services using radar units. In order to prevent interference with radio frequencies, the Federal Communications Commission ("FCC") regulates the use of devices that emit radiation. 47 U.S.C. § 302a. Certain radar units must be certified by the FCC before they may be operated. 47 C.F.R. § 15.1. From 1999 through August 2008, defendant operated radar units that required, but lacked, FCC certification.

Plaintiff asserts that defendant knowingly failed to comply with FCC regulations. It submits meeting minutes, email, shipping records, and testimony which suggest that defendant may have been aware that its radar units required FCC certification by late 2006 or early 2007, and that defendant actively sought FCC certification by early 2008. Defendant maintains that it did not understand the need for FCC certification until plaintiff raised the issue during a bid protest in July 2008.

The parties dispute the ease with which defendant could have obtained FCC certification for its radar units. It eventually spent somewhere between several weeks and six months arranging for certification. It also had to return its radar units to a British manufacturer for appropriate labels and documentation, and possibly for costly hardware upgrades.

According to plaintiff, defendant falsely advertised its services in the course of obtaining contracts with thirty-six governmental entities in Arizona, Colorado, Louisiana, New Mexico, Ohio, Oregon, Tennessee, and Washington.[1] Whether or not defendant did so

---

[1] The thirty-six entities are the state of Arizona, through the Arizona Department of Public Safety; Eloy, AZ; Paradise Valley, AZ; Pinal County, AZ; Prescott Valley, AZ; Star Valley, AZ; Tempe, AZ; Fort Collins, CO; Baker, LA; Gretna, LA; Lafayette, LA; Livingston Parish, LA; Sulphur, LA; Westwego, LA; Zachary, LA; Albuquerque, NM; Las

intentionally, plaintiff claims that defendant misrepresented its services' compliance with applicable laws and approval by the International Association of Chiefs of Police ("IACP"). In support, plaintiff offers the contracts, which include standard promises by defendant to comply with applicable laws. It also offers defendant's proposals to eighteen of the entities.[2] The proposals generally promote defendant's ability to use its systems legally, its compliance with applicable laws, and the lack of past negative legal judgments or future legal risk to the entities resulting from its services. Some of the proposals also promote the IACP's certification of defendant's radar-based systems. The parties submit conflicting evidence concerning the extent to which IACP certification implies FCC certification. Additionally, plaintiff offers testimonial evidence that defendant promoted its vans equipped with radar units lacking FCC certification at six trade shows, and that it issued internet press releases about recently awarded contracts without mentioning its lack of compliance with FCC regulations.

According to defendant, plaintiff did not pursue contracts with twenty-three of the thirty-six entities in question. Plaintiff apparently decided not to submit proposals to eleven of the entities that solicited them,[3] while twelve other entities negotiated directly with defendant.[4] Plaintiff does not substantially dispute this evidence. Of the thirteen entities to

---

Cruces, NM; Chillicothe, OH; Hamilton, OH; Northwood, OH; Parma, OH; Toledo, OH; Trotwood, OH; West Carrollton, OH; Beaverton, OR; Medford, OR; Clarksville, TN; Jonesborough, TN; Oak Ridge, TN; Selmer, TN; Auburn, WA; Bremerton, WA; Burien, WA; Lakewood, WA; SeaTac, WA; and Tacoma, WA.

[2] The proposals were submitted to the state of Arizona; Pinal County, AZ; Prescott Valley, AZ; Tempe, AZ; Fort Collins, CO; Lafayette, LA; Sulphur, LA; Albuquerque, NM; Hamilton, OH; Parma, OH; Beaverton, OR; Clarksville, TN; Jonesborough, TN; Oak Ridge, TN; Bremerton, WA; Lakewood, WA; SeaTac, WA; and Tacoma, WA.

[3] Plaintiff did not bid for contracts with Paradise Valley, AZ; Pinal County, AZ; Prescott Valley, AZ; Fort Collins, CO; Albuquerque, NM; Beaverton, OR; Medford, OR; Jonesborough, TN; Parma, OH; Toledo, OH; and West Carrollton, OH.

[4] These twelve entities are Eloy, AZ; Star Valley, AZ; Baker, LA; Gretna, LA; Livingston Parish, LA; Westwego, LA; Zachary, LA; Las Cruces, NM; Chillicothe, OH;

which plaintiff submitted proposals, it offers defendant's corresponding proposals to eleven: the state of Arizona, through the Arizona Department of Public Safety ("DPS"); Tempe, AZ; Lafayette, LA; Sulphur, LA; Hamilton, OH; Clarksville, TN; Oak Ridge, TN; Bremerton, WA; Lakewood, WA; SeaTac, WA; and Tacoma, WA.

Defendant also submits a series of declarations suggesting that a number of the thirty-six entities did not seek radar-based services. These declarations, however, do not adequately distinguish between what the entities sought, what defendant promoted, and what services were included in the contracts. Similarly, defendant offers evidence that some of plaintiff's proposals would have faired poorly in any event, but it either does not raise the evidence in its motion or the evidence does not adequately control for defendant's conduct. In particular, defendant submits a declaration from a DPS official suggesting that DPS was not misled by defendant's representations, but the official also concedes that it would not have permitted the use of noncompliant equipment. DSOF, Ex. 9 at 9.

Plaintiff alleges that defendant falsely advertised its services in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), tortiously interfered with a business expectancy, and was unjustly enriched. Defendant moves for summary judgment on all claims.

## II. Lanham Act

The Lanham Act prohibits any person from misrepresenting the nature of his services in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). In order to establish prudential standing for a false advertising claim under the Lanham Act, a plaintiff must show a commercial injury that is discernibly competitive. Barrus v. Sylvania, 55 F.3d 468, 470 (9th Cir. 1995). To state a prima facie case on the merits, he must show that (1) the defendant made a false or misleading statement of fact in commercial advertising or promotion; (2) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it likely influenced the purchasing decision; (4) the statement was used in commerce; and (5) he has been or is likely

---

Northwood, OH; Trotwood, OH; and Selmer, TN.

1  to be injured as a result of the statement. <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d
2  1134, 1139 (9th Cir. 1997).

**A. Standing**

Defendant contends that plaintiff lacks prudential standing to bring a Lanham Act claim in connection with the twelve directly-negotiated contracts and the eleven plaintiff failed to pursue through competitive bidding. Because defendant brings its standing challenge at the summary judgment stage, plaintiff must come forward with evidence that defendant's alleged conduct was harmful to its ability to compete in the same market. <u>See</u> <u>Barrus</u>, 55 F.3d at 470. Plaintiff presents testimony from both parties' executives suggesting that the companies are the two principal providers of photographic traffic enforcement services to governmental entities in a national market. Its executives also claim that it had an established marketing presence and the resources to provide services to all thirty-six entities. Thus, plaintiff presents a triable issue concerning the effect of defendant's alleged conduct on plaintiff's ability to compete for business with the twelve entities that negotiated directly with defendant. <u>See</u> <u>supra</u> note 4 (listing the twelve entities).

Plaintiff concedes, however, that it decided not to pursue contracts with eleven of the entities. It argues that its decision was caused by defendant's conduct, but it relies on testimony from its executives merely asserting that they would have bid for these contracts had they known that defendant lacked radar units certified by the FCC. Plaintiff's theory does not support a causal connection between defendant's conduct and plaintiff's ability to compete for these contracts. A Lanham Act plaintiff who independently decides not to participate in a competitive government procurement process cannot show a discernibly competitive injury when he fails to obtain the contract. Therefore, we grant defendant's motion for summary judgment on plaintiff's Lanham Act claim with respect to the contracts that it decided not to pursue through competitive bidding. <u>See</u> <u>supra</u> note 3 (listing the eleven entities).

**B. Administrative Exhaustion**

Defendant maintains that plaintiff cannot proceed with its Lanham Act claim because it has not exhausted available administrative remedies, such as the rescission of some of defendant's contracts through bid protests. In response, plaintiff points out that defendant did not raise administrative exhaustion as an affirmative defense in its answer. It also asserts that exhaustion is not required because it is not challenging the entities' procurement decisions. We agree. Because plaintiff is not contesting the validity of defendant's contracts, we deny defendant's motion for summary judgment on administrative exhaustion grounds.

**C. Commercial Advertising or Promotion**

Defendant raises a series of challenges to plaintiff's prima facie case. It begins by contending that any false or misleading statements it allegedly made were not disseminated widely enough to constitute "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). In order to be actionable, statements need not take the form of a classic advertising campaign, but they must be "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999). Plaintiff offers evidence that defendant made statements promoting its compliance with applicable laws in proposals to eleven entities in competition with plaintiff. Defendant suggests that the relevant market includes thousands of potential customers, but it does not support its claims. A reasonable trier of fact could find that disseminating contract proposals to eleven governmental entities constitutes promotion in defendant's industry.

To be actionable, a statement must also be made "for the purpose of influencing consumers to buy the defendant's goods or services." Id. Defendant correctly points out that the terms of the executed contracts were not statements made to influence the entities' purchasing decisions. Thus, they do not constitute advertising or promotion.

In its reply, defendant contests plaintiff's proposed reliance on defendant's promotional efforts through trade shows and internet press releases as an attempt to change

- 6 -

1  legal theories after the close of discovery. We cannot evaluate this contention without more
2  information. In any event, as discussed below, plaintiff cannot show that defendant's alleged
3  statements through trade show displays and press releases were material. We grant
4  defendant's motion for summary judgment only insofar as plaintiff's Lanham Act claim
5  depends on defendant's contracts for actionable statements.

### D. False or Misleading Statements of Fact

Next, defendant challenges plaintiff's ability to show that its proposals contain false or misleading statements of fact. Falsity is determined based on the full context of a statement, Southland, 108 F.3d at 1140, and even a true statement may be actionably misleading by implication. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 245 (9th Cir. 1990). Defendant argues that it did not make a specific claim concerning FCC certification or an affirmative statement that its services complied with applicable laws at the time of its proposals. Neither party discusses the actual language used in most of defendant's proposals at any length. This language includes repeated references to legality, compliance, and the absence of negative legal judgments and legal risk resulting from defendant's services. PSOF ¶ 514 (citing pages from proposals). Taken in context, a reasonable trier of fact could find that defendant made false statements that its services complied with applicable laws in its proposals.

Defendant argues that a statement assuring compliance with applicable laws is a layperson's statement of legal opinion, and thus not a statement of fact. Yet, it relies on a case holding that lay interpretations of a statute or regulation are non-actionable statements of opinion in the absence of "a clear and unambiguous ruling of a court or agency of competent jurisdiction." Coastal, 173 F.3d at 731. And defendant fails to assert that the relevant FCC regulations are ambiguous.

Similarly, defendant argues that a statement in a March 2008 proposal to DPS that it would comply with all applicable laws and regulations is non-actionable as a statement of future intent. Statements of future intent may be actionable in the absence of a "good faith belief in the truth of the statement." PhotoMedex, Inc. v. Irwin, No. 07-56672, 2010 WL

1462377, at *10 (9th Cir. Apr. 14, 2010). Plaintiff contends that defendant did not intend to comply with all applicable laws when it submitted the proposal to DPS. Plaintiff offers meeting minutes suggesting that defendant was seeking FCC certification at the time, but defendant disputes that it was aware of the need for certification when it submitted the proposal. Under these circumstances, we cannot resolve the falsity of defendant's statement of future intent on a motion for summary judgment.

Defendant also challenges plaintiff's claim that a photograph in the DPS proposal and statements promoting IACP certification in a number of defendant's proposals were misleading by implication. Plaintiff asserts that a radar unit pictured in the DPS proposal implied that defendant used FCC-certified radar units because it was FCC-certified at one time. It also offers an expert witness's opinion that IACP certification implies compliance with FCC regulations. Because triable issues remain concerning the falsity of defendant's proposal statements in context, we will not consider whether these alleged statements would be actionably misleading in isolation.

Finally, defendant does not respond to plaintiff's contention that defendant's trade show displays and internet press releases were misleading by implication. Therefore, we deny defendant's motion for summary judgment on the element of falsity with respect to all of defendant's alleged statements.

### E. Deception

Defendant also challenges plaintiff's ability to show that defendant's statements deceived the governmental entities in question. Deliberately false or misleading statements are presumed to be deceptive. William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 258 (9th Cir. 1995). Contrary to defendant's contentions, a presumption of deception does not require comparative advertising, Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 209 (9th Cir. 1989), or a false statement. William, 66 F.3d at 258. Plaintiff claims that the presumption of deception applies because defendant intended to deceive the governmental entities through its statements. Plaintiff's evidence that defendant sought FCC certification

1 at the same time defendant claims it was unaware of the relevant regulations is sufficient to
2 raise a triable issue on the potential application of the presumption.

In an effort to rebut the presumption, defendant offers a declaration from a DPS official concerning contract requirements and procurement procedure. But the official concedes that DPS would not have allowed defendant to use noncompliant equipment, which suggests that DPS believed that defendant intended to comply with applicable laws. We deny defendant's motion for summary judgment on the element of deception.

**F. Materiality**

Plaintiff must show that defendant's statements were material, in that they were "likely to influence the purchasing decisions." Southland, 108 F.3d at 1139. The parties dispute whether deliberately deceptive statements are presumptively material. Plaintiff cites Southland for the proposition that such statements give rise to a presumption of reliance. Id. at 1146. However, the Ninth Circuit cases that explicitly apply a presumption of reliance do so in the context of directly comparative advertising, in which case the presumption also extends to causation and injury. Id.; U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1040 (9th Cir. 1986). Where, as here, a defendant does not directly compare his goods or services to the plaintiff's, deliberately deceptive statements do not presumptively injure the plaintiff. Harper, 889 F.2d at 209. In the absence of clear direction for non-comparative cases, we will apply the First Circuit's approach, which does not presume that purchasers are influenced by immaterial statements whether or not they are made with the intent to deceive. Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 312 n.12 (1st Cir. 2002).

Defendant maintains that any false or misleading statements it made were immaterial. Plaintiff offers evidence that purchasers of photographic traffic enforcement services are particularly concerned about legal compliance. It also offers evidence that defendant spent months seeking FCC certification and had to send its radar units to Britain. Under these circumstances, a reasonable trier of fact could find that the statements in defendant's proposals would impact an entity's purchasing decision. However, plaintiff lacks evidence that defendant's alleged statements made through trade show displays and press releases

would be influential. Plaintiff's own executives testify that laws governing photographic traffic enforcement services vary widely from jurisdiction to jurisdiction. Thus, a governmental entity evaluating a proposal or negotiating with a provider would not rely on the mere presence of radar units at a trade show or the announcement of a recently awarded contract as evidence that the offered services would comply with applicable laws. Because plaintiff does not present a triable issue with respect to the materiality of these alleged statements, we grant defendant's motion for summary judgment to the extent that plaintiff's Lanham Act claim depends on them.

As a result, only defendant's proposal statements survive summary judgment. In combination with plaintiff's lack of standing, its Lanham Act claim is limited to the proposals defendant submitted to DPS; Tempe, AZ; Lafayette, LA; Sulphur, LA; Hamilton, OH; Clarksville, TN; Oak Ridge, TN; Bremerton, WA; Lakewood, WA; SeaTac, WA; and Tacoma, WA.

**F. In Commerce**

Defendant, which is based in Arizona, argues that its proposals to the entities in Arizona do not satisfy the Lanham Act's jurisdictional element because they did not cross state lines. In relevant part, the Lanham Act reaches statements that a person "uses in commerce." 15 U.S.C. § 1125(a)(1). The Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Congress may regulate intrastate commerce that "substantially affects" interstate commerce. United States v. Lopez, 514 U.S. 549, 559, 115 S. Ct. 1624, 1630 (1995). Thus, the Lanham Act's jurisdictional element encompasses statements used in such intrastate commerce. Summit Tech., Inc. v. High-Line Med. Instruments, Co., 933 F. Supp. 918, 934 n.10 (C.D. Cal. 1996).

Defendant used its Arizona proposals in commercial bidding between national companies vying for the ability to provide traffic enforcement services. Because there is little doubt that this economic activity sufficiently affects interstate commerce to fall within the purview of the Lanham Act, we deny defendant's motion for summary judgment on jurisdictional grounds.

## G. Causation and Injury

Plaintiff must show both causation and injury because it seeks compensatory damages, but not an injunction. Harper, 889 F.2d at 209-10. Although defendant challenges plaintiff's broader theory of causation, plaintiff's claim is now focused on defendant's proposals submitted in direct competition with plaintiff's. Triable issues remain concerning defendant's use of false or misleading statements in these proposals, and plaintiff offers expert testimony on damages. Therefore, we deny defendant's motion for summary judgment on the elements of causation and injury in connection with the remaining portion of plaintiff's Lanham Act claim.

## III. State Law Claims

Neither party gives more than cursory treatment to plaintiff's tortious interference and unjust enrichment claims. Among other elements, the former requires improper conduct and a valid business expectancy, Hill v. Peterson, 201 Ariz. 363, 366, 35 P.3d 417, 420 (Ct. App. 2001), and the latter requires an impoverishment connected with an enrichment in the absence of justification. Trustmark Ins. Co. v. Bank One, Ariz., 202 Ariz. 535, 541, 48 P.3d 485. 492 (Ct. App. 2002). Plaintiff only presents triable issues on improper and unjustified conduct involving defendant's proposals, and it cannot show an expectancy or an impoverishment where it decided not to participate in competitive bidding. Thus, plaintiff's state law claims are limited to the same eleven entities as its Lanham Act claim.

**IT IS THEREFORE ORDERED DENYING** defendant's motion for leave to file demonstrative aids and supplemental exhibits (doc. 202). The clerk shall not file the lodged exhibits (docs. 218, 238, & 241).

**IT IS FURTHER ORDERED DENYING IN PART** and **GRANTING IN PART** defendant's motion for summary judgment (doc. 108). It is denied on plaintiff's Lanham Act claim in connection with defendant's proposals to the state of Arizona through the Arizona Department of Public Safety; Tempe, AZ; Lafayette, LA; Sulphur, LA; Hamilton, OH; Clarksville, TN; Oak Ridge, TN; Bremerton, WA; Lakewood, WA; SeaTac, WA; and Tacoma, WA. It is denied on plaintiff's tortious interference and unjust enrichment claims

in connection with the same eleven governmental entities. It is granted in connection with the other alleged statements and entities.

DATED this 22nd day of April, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge