**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| American Traffic Solutions, Inc., | ) ) ) | |
| Plaintiff, | ) ) | CIV 08-2051-PHX-FJM |
| vs. | ) ) ) | Phoenix, Arizona<br>April 30, 2010<br>3:10 p.m. |
| Redflex Traffic Systems, Inc., | ) ) | |
| Defendant. | ) ) ) | |

_____)

**BEFORE:  THE HONORABLE FREDERICK J. MARTONE, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**FINAL PRETRIAL CONFERENCE**

Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                        **A P P E A R A N C E S**

2

3    For the Plaintiff:

4            McClanahan Myers Espey
             By:  **RANDY J. MCCLANAHAN**, ESQ.
5                 **ROBERT H. ESPEY II**, ESQ.
             700 Louisiana Street, Suite 4100
6            Houston, TX  77002

7    For the Defendant:

8            Greenberg Traurig
             By: **E. JEFFREY WALSH**, ESQ.
9                **ROBERT A. MANDEL**, ESQ.
                 **STACEY FAITH GOTTLIEB**, ESQ.
10           2375 East Camelback Road, Suite 700
             Phoenix, AZ  85016

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  This is criminal matter -- I'm sorry --

2    civil matter 08-2051, American Traffic Solutions, Inc., versus

3    Redflex Traffic Systems, Inc., et al., on for final pretrial

4    conference.  Counsel, please announce.

5          MR. MCCLANAHAN:  Good afternoon, Your Honor.  For the

6    plaintiff ATS, Randy McClanahan and my partner Bob Espey.

7          THE COURT:  Welcome.

8          MR. MCCLANAHAN:  Thank you, Your Honor.

9          MR. WALSH:  Good afternoon, Your Honor.  Jeffrey

10   Walsh, Robert Mandel, and Stacey Gottlieb for the defendant

11   Redflex Traffic Systems.

12         THE COURT:  Welcome.  Please have a chair.  Let me

13   first tell you what I've received.  I've read a document called

14   Plaintiff American Traffic Solutions, Inc.'s Proposed Pretrial

15   Order, defendant's objection to it, the defendant's proposed

16   pretrial order, American Traffic's objections to the

17   defendant's proposed verdict form, the plaintiff's trial memo

18   and the defendant's trial memo.

19         It wasn't at all clear to me why the parties were not

20   able to sit down and produce a joint statement.  The history of

21   this case maybe suggests why.  There seems to be bad blood

22   either between and among your clients or between and among the

23   lawyers.

24         But a simple enough thing like this where you had all

25   the time in the world to produce a single document would have

1    been helpful to me.  When they're not joint documents, I don't

2    feel like there's much in either one of them that I can rely

3    on.  When they're joint documents, at least you know there are

4    not going to be objections at least as to something in the

5    case.  But when there are separate documents, they have little

6    to communicate other than that they are one party's expression

7    of a view.

8            So you really haven't helped me much by producing two

9    separate documents.  It was also a little unorthodox to attach

10   as exhibits all the other documents that we asked to be filed.

11   But we can rip them apart and deal with them separately when we

12   need to deal with them.

13           The second thing that troubled me greatly was not only

14   did you not file a joint proposed pretrial order or lodge one

15   with me, but you seemed to ignore or at least the defense

16   seemed to ignore Paragraph 14 of our Rule 16 order that

17   discouraged motions in limine and suggested that they be filed

18   only in connection with matters that would otherwise cause a

19   mistrial.  That's based on my experience that it is impossible

20   to rule on extensive motions in limine that raise garden

21   variety evidentiary objections in the pretrial setting, because

22   then we end up having two trials instead of one.  And worse

23   than that, it's impossible to know or understand the context in

24   which the evidence is offered in a motion in limine that's

25   considered on the eve of trial.

But in this case, the defendants have filed, it seems to me, about 13 or so motions in limine.  And several of them also violate that provision of our Rule 16 order that said they should not exceed two pages.

So, again, looking at the abusive motion in limine practice, looking at the failure of the parties to produce a joint pretrial order and the rejection of our page limits leaves me with a kind of pained feeling about the relationships that exist between the clients and the lawyers and the way in which this case is going to be presented.

This is the stack of motions that you filed.  I can't imagine that anyone would reasonably expect that a judge would actually read these documents and try to go through them at a pretrial conference.

It would be easier to try the case than to try to go through the minutiae and the bickering that goes on in connection with these documents.

So it just reflects an approach to litigation that is not only unproductive and not constructive but also aggravating.

The motions continue to reflect a spirit of non-cooperation that really has permeated this case from the outset, beginning with motions to disqualify counsel.  And it really make the process distasteful and unpleasant, which it shouldn't be.

1          It's one thing to have the clients in dispute over

2     something like this.  It's another thing for that to spill over

3     to counsel.  It's just unnecessary bickering, unnecessary

4     contentiousness.

5          I hate to think of what you're charging your clients

6     for all of this.  But if I were your client, I wouldn't pay

7     you.

8          So let's take it from the top, dealing with the

9     clerk's list, which was docket item number 244, which was the

10    defendant's motion to vacate the October 22nd protective order.

11         Their argument here is that the October 22nd

12    protective order should have and was superseded by the February

13    8 protective order and that the plaintiff is using the

14    protective order, the earlier one, to require defendants to

15    withhold certain critical documents from their clients to

16    prepare for trial, which if true would be violative of the

17    letter and the spirit of the February 8 order as articulated in

18    the order that we entered that accompanied that order, which I

19    believe was, for the record, was docket item number 199, our

20    order of February 8, 2010, that came out with the second

21    protective order.

22         And at Page 3 of that order we went into some detail

23    about how we rejected the parties' approach to attorney's eyes

24    only and how we suggested that their further suggestion of

25    moving to seal things were completely inconsistent with federal

1  law.

2          So I don't know why this is still an issue.  I don't

3  know whether the documents that are the subject of this motion

4  to vacate are even within the description of the earlier order,

5  the order of October 22.  It doesn't strike us that the

6  spreadsheet would be within the scope of the five paragraphs in

7  the order of October 22.  And if it's not within the scope of

8  it, it's not even an issue.

9          If it is within the scope of it, you would think that

10  one would look at our order of February 8 and the letter and

11  the spirit behind it to make a decision about whether the

12  document was one that needed to be shared in order to properly

13  defend against the case.

14          I don't have a way to help you on this.  My first

15  reaction was to simply vacate both protective orders and let

16  you stew in your juices over your disagreement until you can

17  reach a better agreement since these protective orders were

18  both a product of your stipulations in the first place.  The

19  Court has no independent interest in protective orders.  They

20  don't serve the public interest in any way.  They simply serve

21  your private interests.

22          And then it occurred to me, well, maybe somebody

23  justifiably relied on these things.  And certainly there may be

24  things within the order of October 22 that ought to be

25  preserved in a private way.  But you'd think that the lawyers

1   who were involved in this case for all these years would know

2   that and wouldn't have to quarrel about it at this point.  They

3   both know what needs to be proved and what needs to be defended

4   against.

5           So it left me kind of wondering about it all.  It

6   struck me as a little bit odd that, if the defendant thought

7   that the order of October 22 was simply an expedient at the

8   beginning of the case and was replaced by the order of February

9   8, that it wasn't mentioned in the proceedings leading up to

10  the February 8 order.

11          So, again, I kind of throw up my hands.  About the

12  best I can do on it is this.  Because it is entirely possible

13  that there is something that's within the scope of the earlier

14  order that the parties relied on, we're going to deny the

15  defendant's motion to vacate the October 22 protective order,

16  which was docket item number 244, for the clerk's benefit, but

17  advise the parties that since they have superior knowledge of

18  what they hope to prove in this case and what they need to

19  defend against it, that they look to our order of February 8

20  and the protective order that accompanies it to understand the

21  scope of our thoughts about the fundamental principle that no

22  party can be denied information that's critical to either the

23  assertion of a claim or a defense.

24          And while I've denied the defendant's motion, if it

25  turns out to be the case during this trial that when I have

context in understanding that something is missing and the failure to be able to share the document with the client skews things in an unfair way, then just let me know, and we can perhaps remedy it in the middle of trial.

The next one was docket item number 248, the defendant's motion to seal the rebuttal expert report of Daniel Ingberman.  I don't see anything that justifies the sealing of that document within the meaning of Kamakana, so that motion is denied.

The next one is the defendant's motion to exclude Daniel Ingberman's proposed damages testimony, which was docket item number 249.  And this is a motion in limine, and yet it is 18 pages long.  It just is hard to believe.  It's like we're, you know, we're kind of ghost walking in two separate worlds here.  The Rule 16 order is not aspirational.  If it was aspirational, it wouldn't be called an order.

So I don't understand why anyone would file an 18-page motion in limine.  Nobody I know would think that an 18-page motion in limine is appropriate.  If you need 18 pages to explain it, then by definition it's premature and would best be decided in the context of a trial when one understood it.  This one also seems to extensively raise a Daubert issue.

But to raise a Daubert issue in an 18-page motion with over 35 footnotes a week before trial strikes me as abusive.  I think if you have a Daubert issue that really needs to be

1    decided in terms of fundamental reliability, it should be done

2    long before that, much earlier in the case, when it can be

3    properly briefed and considered and, if necessary, decided by

4    the Judge.

5         So the defendant's motion to exclude Daniel

6    Ingberman's proposed damages testimony is denied for a variety

7    of reasons.  It exceeds the two pages imposed by our Rule 16

8    scheduling order.  It comes too late in connection with

9    Daubert.

10         The next motion, for the clerk's benefit, is docket

11    item number 257, defendant's motion to exclude certain opinion

12    testimony of Michael C. Keeling.  Again, totally ignored our

13    Rule 16 order.  It's 15 pages long.  This motion is denied for

14    violating our Rule 16 scheduling order.

15         The next one is the defendant's motion in limine to

16    preclude ATS from characterizing Redflex's mobile radar devices

17    as illegal.  As I understand them, the major thrust of the

18    complaint in this case is that somehow the plaintiffs were

19    damaged because the defendants represented to public agencies

20    that their equipment was in compliance with all applicable laws

21    and regulations.

22         And so this issue necessarily is going to come up.

23    Now, whether they use the words illegal or non-compliant or in

24    violation, I don't know how you avoid it.  Now, it may be in

25    the context of some of this stuff that, you know, one might

1  suggest that it is argumentative.  I suppose in an opening

2  statement one could recite the cold facts without using the

3  word illegal.  But certainly in a summation at the end of the

4  case, one ought to be able to use the word illegal if the

5  evidence or its inferences supported it.

6          So in many ways this is premature in the case.  So

7  that the defendant's motion in limine to preclude ATS from

8  characterizing Redflex's mobile radar devices as illegal is

9  denied on grounds of prematurity, which is, for the clerk's

10  benefit, docket item number 258.

11          The next one is Redflex's motion in limine to preclude

12  plaintiff's lay witnesses from providing expert testimony.

13  This isn't mistrial material.  You know, we, as I said, we

14  can't try the case twice.  I don't know what this witness is

15  going to say.  And I really would prefer to only understand it

16  once.

17          So Redflex's motion in limine to preclude plaintiff's

18  lay witnesses from providing expert testimony is denied on

19  grounds of prematurity.  And, by the way, counsel, wherever we

20  have denied motions in limine on grounds of prematurity or in

21  violation of our page limits, it's without prejudice to your

22  right to make an objection at trial.

23          The next one is Redflex's motion in limine to preclude

24  Michael C. Keeling from offering certain expert testimony,

25  which, for the clerk's benefit, is docket item number 260.

1    Again, this is premature.  I do think that without

2    knowing the nature of the testimony or the context in which

3    it's going to come in, it may well be the case that we would

4    limit this to Arizona contracts, and maybe as to non-Arizona

5    contracts, it may go to the weight rather than the

6    admissibility of the testimony.

7    But at this stage of the trial, I have no clue, which,

8    again, is the vice of motions in limine that are not tied to

9    mistrials.

10    And so Redflex's motion in limine to preclude Michael

11    Keeling from offering certain expert testimony is denied on

12    grounds of prematurity.  And that is docket item number 260.

13    The next one is the defendant's motion in limine to

14    preclude reference to excluded governmental entities and

15    statements pursuant to order dated April 22, 2010.

16    This is the kind of thing that really does depend upon

17    the evidence.  It depends upon the context in which it is

18    offered.  It depends upon the purpose for which a party may

19    offer it.  And so it's absolutely premature.

20    So the motion in limine to preclude reference to the

21    excluded governmental entities is denied on grounds of

22    prematurity, which is docket item number 261.

23    The next one is plaintiff American Traffic Solutions,

24    Inc.'s motion in limine, which I believe was its only motion

25    in limine.  These other proceedings, it is possible that they

1   may be relevant.  And while they may be raising different

2   claims, it isn't possible for me to know whether they would be

3   irrelevant here.  It does strike me that the decisions of the

4   FCC in connection with the major allegation that the plaintiff

5   makes would be relevant to the case.

6          So for that reason plaintiff American Traffic

7   Solutions, Inc.'s motion in limine is denied, which is docket

8   item number 263.

9          The next one is Redflex's motion in limine to preclude

10  plaintiff's expert witness, Carl Franklin, from providing

11  opinion testimony on procurement practices.  And, again, I

12  think just the statement of the description of the motion is

13  reason enough to deny it.

14         So it is ordered denying this motion on grounds of

15  prematurity, which is docket item number 265.

16         The next one is Redflex's motion in limine to preclude

17  plaintiff's expert witness Wells from providing opinion

18  testimony applying the law to the facts.

19         I think an expert in this area is likely to be able to

20  offer evidence that might be helpful to the jury.  I can't

21  imagine that the jurors or I will know much about the mechanics

22  of these systems.  So that might very well be helpful.

23         Certainly any ultimate opinions are likely to be

24  excluded.  Certainly any opinions on lawfulness are likely to

25  be excluded.  But outside the context of the case, it's

1    impossible for me to know the limits or the scope of this.

2         So for that reason Redflex's motion in limine to

3    preclude plaintiff's expert witness Wells from providing

4    opinion testimony applying the law to the facts is denied.  And

5    that's docket item number 267.

6         And then the next one is Redflex's motion in limine to

7    preclude plaintiff's proposed damages expert, Daniel E.

8    Ingberman, from testifying to liability or intent.

9         This looks like a late understanding that maybe the

10   other one violated the page limits.  But, in any event, I think

11   this is premature.  I think we have to take it question by

12   question and objection by objection.

13        I doubt very much that we will allow him to testify

14   about things like intent.  But I can't decide an issue like

15   this in the cold before trial.  So Redflex's motion in limine

16   to preclude plaintiff's proposed damages expert from testifying

17   as to liability or intent is denied, which is docket item

18   number 273.  And as with all of these, it's without prejudice

19   to object at trial.

20        The next one is American Traffic Solutions' motion to

21   reconsider two portions of our order of April 22, 2010.  And

22   both of them, they were in connection with the contracts with

23   Jonesborough and Auburn.  Our order addressed the question of

24   proposals rather than contracts.  And my clerk went back and

25   looked at your statements of facts and the deposition

1    citations, and we were persuaded that we were right the first

2    time.

3            And so American Traffic Solutions' motion to

4    reconsider, which is docket item number 277, is denied.

5            And then at long last we have Redflex's motion to

6    prohibit plaintiff American Traffic Solutions from presenting

7    Stephen Clarke during plaintiff's case in chief.

8            This came in yesterday.  I don't think that American

9    Traffic had a chance to respond to it.  So let me ask

10   plaintiff's counsel, Mr. McClanahan or Mr. Espey, did you want

11   to respond to this?

12           MR. MCCLANAHAN:  Respond in writing, Your Honor?

13           THE COURT:  No.  I meant right here.

14           MR. MCCLANAHAN:  I would be happy to respond right

15   now.  Should I go to the podium?

16           THE COURT:  Please.

17           MR. MCCLANAHAN:  Yes, sir.  Your Honor, we don't call

18   Mr. Clarke as for expert testimony.  We call him for some fact

19   information.  Part of the plaintiff's burden in going forward,

20   as is reflected in our pretrial order, is that we need to prove

21   what Redflex's revenues were.  Mr. Clarke has done presumably

22   extensive interviewing of the Redflex people and has -- and

23   will be able to provide testimony on what their revenues were

24   on the contracts that you will allow to be put into evidence at

25   trial.

1          So if there's, for example, 11 contracts, what I

2   envision doing is calling Mr. Clarke for that very limited

3   purpose simply to get into the record before directed verdict

4   time the most accurate statement we have, since it's Redflex's

5   documents, of what those revenues were.

6          We did a very quick look at the law on this since it

7   came in late last night, and Mr. Espey and I were traveling

8   this morning to get here, but I did find -- excuse me -- a

9   Southern District of Alabama case in 2007 citing an Eleventh

10  Circuit case.

11         In that case, defendants had moved in limine to

12  prevent plaintiffs from calling defendant's expert.  And the

13  Court said that neither the parties' briefs -- And for the

14  record, Your Honor, I apologize.  This is Kerns, K-e-r-n-s,

15  versus Pro-Foam of South Alabama, Inc., a Southern District of

16  Alabama, August 7, 2007, found at 572 F.Supp.2d 1303.  And the

17  Court wrote here on this precise question:  "Neither the

18  parties' briefs nor the court's own research reveals any per se

19  rule forbidding a party from calling an adversary's expert

20  during his case in chief," citing an Eleventh Circuit case.

21         It says, "The Eleventh Circuit observed that once a

22  witness has been designated as expected to testify at trial,"

23  which Mr. Clarke was some time ago, there may be situations

24  when the witness should be permitted to testify for the

25  opposing counsel," citing a Northern District of Iowa case,

1    1996.

2         And then the court's quoted another case, District of

3    District of Columbia, quote -- and I thought this language

4    would be useful to this Court -- "Once an expert is designated,

5    the expert is recognized as presenting part of the common body

6    of discoverable and generally admissible information and

7    testimony available to all parties."

8         So the Court basically is saying -- and I think that's

9    the gist of the Eleventh Circuit opinion -- that once either

10   side designates an expert, they don't own the expert.  The

11   expert can be called as would be appropriate in the case.

12        And again I'm not trying to disrupt their presentation

13   of Mr. Clarke.  I don't plan to.  I think, frankly, unless we

14   get into a hassle about it, his testimony in my case would take

15   about five minutes.  I don't think it will be complicated at

16   all.  But, again, the reason for my wanting to do that is to

17   get accurate information into the record on the topic of

18   Redflex's revenues.  And that's the reason.

19        THE COURT:  Let me ask you this.  It sounds like

20   you're simply trying to offer things that are not in dispute.

21        MR. MCCLANAHAN:  And if Mr. Walsh -- Since I just got

22   the motion last night, I haven't discussed it with Mr. Walsh.

23   But if we could enter into a stipulation on those matters, we

24   wouldn't need to call him at all in our case.

25        THE COURT:  Well, that's of course where I'm going

1   with this.  Was this the subject of requests for admissions or

2   any attempt to stipulate long before now?

3          MR. MCCLANAHAN:  Well, there was discovery conducted

4   about it.  Our expert witness has expressed testimony about it.

5   We have other records about it.  But Redflex has of course the

6   most accurate information.  And I frankly thought it would be a

7   very expeditious and easy way to get correct information into

8   the record.  So that's what it's all about.

9          THE COURT:  Do you need it?  In other words, without

10  this witness, is your case compromised?

11         MR. MCCLANAHAN:  It -- I don't think it is, Your

12  Honor.  I'm just always very careful about trying to protect

13  against a directed verdict because I didn't get in something

14  that otherwise could have gone in.  I mean, I will have

15  evidence certainly on that.  The question is I'm trying to make

16  it as accurate as possible.  And presumably Mr. Clarke's

17  number, since he's been into all of Redflex's files about this,

18  will be the most -- the most accurate.

19         His numbers are not appreciably different from mine,

20  but he's got -- he's been actually doing the work at Redflex on

21  this for months.

22         THE COURT:  So you're going to be offering evidence

23  that will be sufficient to get you over directed verdict

24  anyway?

25         MR. MCCLANAHAN:  I would think so, Your Honor.

```
 1          THE COURT:  So you could do that.  And then if you
 2    examined him on cross-examination in the defense case and you
 3    liked what he had to say that was different from your own, you
 4    could adopt that and argue that to the jury?
 5          MR. MCCLANAHAN:  Yes, Your Honor.  Perhaps we could do
 6    it this way.  Perhaps I could put in my evidence.  And then at
 7    the time of directed verdict, if one -- if a directed verdict
 8    motion is made, I could respond to the motion and perhaps ask
 9    leave to be allowed to supplement it with cross-examination of
10    Mr. Clarke during their case before the Court ruled on that
11    small point.  So I do think there are many ways to handle it,
12    and I'm really not trying to be difficult about this.
13          THE COURT:  Thank you very much.
14          MR. MCCLANAHAN:  Thank you, Your Honor.
15          THE COURT:  Mr. Walsh, what are your thoughts on this?
16          MR. WALSH:  Several, Your Honor.  Of course you have
17    some in our papers that we filed.
18          And I apologize for filing that late, but we just
19    became aware of it because Mr. McClanahan and his firm had
20    never designated Mr. Clarke as either a fact or an expert
21    witness until three days after the deadline for us to submit
22    witness lists.  So that's one of our objections.
23          THE COURT:  But isn't that because -- He's your
24    witness, isn't he?
25          MR. WALSH:  He is.  That's correct, Your Honor.  And
```

1    here's --

2         THE COURT:  So he wouldn't have -- You know, I don't

3    know.  I'm just musing here, but I would imagine that he's in

4    the last few days of preparing for trial, and he's looking at

5    the report, and he likes the figures, and he would like to get

6    them in.

7         Is there some way where the two of you can stipulate

8    to those figures?

9         MR. WALSH:  Well, we've produced all the

10   documentation.  Here's the issue.  I think his expert witness

11   has failed to do his job.  The expert witness, Mr. --

12   Dr. Ingberman, who you know is the subject of our Daubert

13   motion and our motion in limine, two separate motions that we

14   filed on two different grounds, issued his first report in

15   July.  And at that time he said in his report I don't have the

16   records yet from Redflex, so I can't do the but-for analysis

17   that I need to do.

18        But he did issue a rebuttal report in October of 2009.

19   By that time he had all of the records, and he chose not to

20   take those records and say I will now supplement with the

21   information I have.

22        So he failed to do his job.  Our client has spent a

23   considerable amount of money preparing Mr. Clarke to rebut what

24   it is that Dr. Ingberman has come up with.

25        And now Mr. McClanahan and ATS want to take advantage

1    of the $100,000 or $80,000, whatever it is, that they've spent

2    with Mr. Clarke to prepare a defense and say, well, I just want

3    to use some of that information to make out a failing in my

4    case in chief.

5          THE COURT:  But if you did such a good job with your

6    expert that you've persuaded them that your view of the

7    evidence is better than theirs, it sounds like you've

8    prevailed.  In other words, why look a gift horse in the face?

9          MR. WALSH:  Well, I think the gift horse in the face

10   is that we think it's improper for him to be able to now take

11   our expert and put him on.  He's not accepting Mr. Clarke's

12   damages.  What he is saying, if I understand correctly from

13   what Mr. McClanahan just said, is he wants to take the work

14   that Mr. Clarke did to analyze all the revenues.

15         Our records were not kept in such a way that you could

16   go through -- "ours" meaning Redflex's records -- were not kept

17   in such a way, Your Honor, that you could go through and easily

18   identify Lafayette, Louisiana, or Tempe, Arizona, or whatever,

19   what the revenues were, what the costs were.

20         So Mr. Clarke and his people spent a substantial

21   amount of time with the accounting department of Redflex

22   sorting through all of that and figuring out contract by

23   contract what the revenues and the expenses were and properly

24   allocating them to the jurisdictions that Dr. Ingberman decided

25   were in play.

1    And what Mr. McClanahan and ATS now want to do is take

2    advantage of all that expense and all that work we did to make

3    out their case in that regard.  But he's not going to adopt

4    Dr. -- I'm sorry -- Mr. Clarke's damages assessment because

5    Mr. Clarke's damage assessment is that we're actually losing

6    money overall on all of those contracts.  It's a negative $1.6

7    million.

8    So he wants to take all the work effort, all the

9    dollars and say, "Now I'm going to make this fellow my expert

10   on the eve of trial," never having disclosed him, not having

11   done the work himself or having Dr. Ingberman to do the work,

12   and put the burden on my client who's already spent an enormous

13   amount of money, as Your Honor understands, getting ready to

14   defend the case, only to see our expert witness turned around

15   and become an involuntary witness for them.  That was never

16   disclosed before.

17   THE COURT:  Can you solve this problem simply by

18   stipulating to the factual accuracy of those portions of your

19   expert's report that he wants to use?

20   MR. WALSH:  Well, obviously from my client's

21   viewpoint, they would prefer not, because I think the burden of

22   proof is on ATS to establish that in the first place.  And if

23   they didn't identify a witness who could do that analysis, why

24   should we stipulate and give them an element of the five

25   elements of the claim?

1      THE COURT:  I guess it's because you're going to try

2  to prove that in your defense, aren't you?

3      MR. WALSH:  I won't even put on Mr. Clarke if they

4  can't put on the evidence of revenues and costs sufficient to

5  get past a directed verdict motion.  That's one of the five

6  elements of a Lanham Act claim and one of the elements of the

7  unjust enrichment and tortious interference as well.

8      I think there's a fundamental unfairness here to come

9  in a week or week and a half before trial and have ATS say:

10  Well, we're just going to use all the work your expert did and

11  make him in essence our expert.  We won't ask him the final

12  question about what do you think the damages are but do all

13  this analysis that our expert didn't do and it's now too late

14  for them to do, didn't issue a report on it.

15      Your Honor's made it clear if it's not in an expert

16  report, the expert shouldn't be testifying about it.  So now

17  they're trying to take our work effort and piggyback off of it.

18  I think that's fundamentally unfair.  We had no notice of it.

19  And it's costing my client an enormous amount of money to have

20  gotten to this point.

21      But if I don't have to put on Mr. Clarke at all

22  because they failed to make out their case of damages, then I

23  think that's their problem at this point.  They've had a year

24  and a half to do their homework, and they certainly know what

25  they need to do to get this case done.

1          THE COURT:  All right.  Thank you very much.  It

2     doesn't appear to me that there's a cooperative spirit here

3     with respect to this issue but instead an adversary approach to

4     it.

5          I would suggest this.  The major concern that American

6     Traffic Solutions has is that it fears that it will confront a

7     motion for directed verdict or judgment as a matter of law as

8     to a particular issue at the close of its case without this

9     evidence.

10          And what we'll do is this, because I think we can have

11     our cake and eat it too.  It is a little unorthodox to call the

12     other party's expert in your own case.  It kind of detracts

13     from the other side's opportunity to clothe the expert in the

14     veneer of their own position.

15          So the motion to prohibit American Traffic Solutions

16     from presenting Clarke during the plaintiff's case in chief,

17     which is docket item number 288, is granted.  But if the

18     parties are not able to stipulate in writing before trial as to

19     the factual basis for his opinions that the plaintiffs now find

20     of use to their case, then we won't be granting any motion for

21     directed verdict at the close of the plaintiff's case on that

22     issue but instead take it under advisement and allow the

23     plaintiff to finish out its case, if necessary, on the

24     cross-examination of the defense expert in the defense case.

25          Presumably the defense will put the witness on because

1   you will have already put your own expert on.

2            So I think that takes care of all the pending motions.

3            Let me go over some ground rules with you.  We had

4   originally scheduled this out for nine days.  I think we've cut

5   this case down significantly, and I think the maximum number of

6   days that we're going to give this case are six days.

7            And we'll give each side three days.  And a trial day

8   is five hours.  So each side will get 15 hours within which to

9   make its opening statements, make its final arguments, make its

10  direct and cross-examination, and select the jury.

11           So that will be the length of the trial.  And we'll

12  tell the jury that they'll be six days.

13           As you could tell from the case that preceded yours,

14  we have a little trial to the Court that is also scheduled for

15  May the 11th, and because it's a simpler case than yours

16  because there's no jury, we're going to take it first if you're

17  both still standing on the 11th.

18           Counsel for the United States thought that the chance

19  of their case settling was pretty small, but in my experience,

20  hope always springs eternal, and so you never know.

21           So if their case settles, you'll go on the 11th.  If

22  their case doesn't settle, then you'll start on Tuesday, May

23  18, the following week, because their case will exhaust those

24  three days, the 11th, 12th, and the 13th.

25           So you'd go on May 18, May 19, and May 20, for those

1    three days, and then the following week, May 25, May 26, and

2    May 27.  So two successive weeks of Tuesday, Wednesday and

3    Thursday, with 15 hours each.

4            And we'll tell the jury that as well.  Of course they

5    can deliberate for as long as they want to.  But at least

6    they'll know they'll have the case in their hands no later than

7    the 27th if you start on the 18th and no later than the 20th if

8    you start on the 11th.

9            In fairness to you, I suspect you have out-of-state

10   witnesses, who need to know about your travel plans and so

11   forth.

12           What I thought might be adequate for you is that if we

13   let you know next Wednesday, which is the 5th, Cinco de Mayo,

14   what the status of the case is with the eminent domain case

15   that's scheduled for the 11th.  If that's settled by the 5th,

16   then we'll tell you you'll start your trial on the 11th.  If

17   that hasn't settled by the 5th, then we can tell you you'd

18   start on the 18th, and that ought to give you enough days to

19   rearrange your schedules or plan your out-of-state witnesses.

20           The jury will consist of eight people.  There will be

21   three strikes for the plaintiff and three strikes for the

22   defendant.  We'll ask the clerk to pull a panel of about 30

23   persons.

24           The hours will be from 9:00 to 12:00 and from 1:30 to

25   4:30, with a midafternoon and a midmorning break.

1          Please file with the clerk of the court, our clerk,

2     give your witness and exhibit lists on her forms by noon on the

3     day before trial.  So if you go on the 11th, give them those by

4     noon on the 10th.  If you go on the 18th, give them to her by

5     noon on the 17th.

6          I'll do the voir dire.  I'll ask some but not many of

7     the questions you've lodged.  And then I'll give each side five

8     minutes within which to engage in follow-up voir dire based

9     solely on the questions that I've asked or the jurors' answers

10    to them.

11         If you have an objection to make, just state the

12    simple basis for the objection without any argument.  And if I

13    don't understand your objection, I'll solicit something from

14    you.

15         Please use this large lectern to examine the

16    witnesses, and we'll have that small black portable lectern

17    brought over for your voir dire, your opening statements, and

18    your summations.

19         And we typically don't do bench conferences.  And in

20    light of the contentiousness that has infected this case from

21    the beginning, we especially don't want to have bench

22    conferences in this case.  We don't like them for lots of

23    reasons, but they're really disruptive and consumptive of juror

24    time.

25         So I would ask you that if you need to make a record,

1    if, for example, you need to make an offer of proof, then make

2    note of it, and you can make your records at the breaks, the

3    midmorning break, the noon hour, the midafternoon break, and at

4    the end of the day.  That way we don't waste jury time

5    listening to the two of you argue.

6         If either of you intends to invoke the rule of

7    exclusion of witnesses, let the other side know, and then try

8    to cooperate in policing the courtroom as to who those

9    witnesses would be.  And try to reach the right balance.  We

10   certainly don't want to, with this kind of a schedule -- you

11   know, your drop dead date is the end of the sixth day -- we

12   don't want to have you run out of witnesses.  On the other

13   hand, we don't want witnesses that are just sitting out in

14   those little anterooms for ours on end.

15        So try to work with each other, cooperate with the

16   appearance of witnesses that reaches the right balance between,

17   one, our not running out and, two, their not waiting too long.

18        Let me see if there's anything else.  I saw your

19   witness lists.  They look like a telephone directory of a small

20   community.

21        You're not going to be able to fit that many people in

22   the time you have.  I would urge you to look at your cases and

23   decide what is critical to your case so that you, when you file

24   your witness lists with the clerk on the day before trial,

25   they'll be a lot shorter than they look like now.  Because I'm

1   going to use those lists to tell the jury who the witnesses are

2   likely to be.

3          I don't know about document admissibility problems.

4   There shouldn't be in a civil action.  That's for sure.

5   Because all the document admissibility issues should be

6   resolved long before trial by stipulation or by requests to

7   admit and so forth.  And especially where, as here, you have a

8   limited amount of time, you don't want to waste it with stuff

9   that's only useful to me in terms of admissibility and not

10  useful to the jury in terms of deciding the facts in this case.

11         So I don't know whether you have any objections to any

12  of these documents, but to the extent that you don't have

13  objections, just have the clerk mark them directly into

14  evidence.

15         To the extent that you do have objections, you really

16  ought to limit it to those objections that are made in

17  good faith where there's real live controversy rather than

18  putting your opponent to the trouble of proving up something

19  that's undisputed.

20         I don't think we want to subject our jury to the

21  foundation for business records exceptions to the hearsay rule

22  and the like.  So be sure to stipulate to the admissibility of

23  all your documents.  I assume you already either had the

24  foundation laid at your depositions or by way of requests for

25  admissions up to this point anyway.

1      Kerry, have we satisfied all your needs in connection

2  with this trial?

3      THE CLERK:  Yes.

4      THE COURT:  Let me ask counsel for plaintiffs,

5  Mr. McClanahan or Mr. Espey, is there anything from the

6  plaintiff's perspective that we need to go over to make sure

7  that this is as smooth as possible?

8      MR. MCCLANAHAN:  One point that I'd like to bring up

9  to the Court's attention.

10     THE COURT:  Please.

11     MR. MCCLANAHAN:  Thank you for your explanation about

12 how you intend to do the jury selection.  That's very

13 informative and instructive for us.  Since the voir dire is

14 going to be conducted by the Court and since we have a very

15 limited follow-up, I would like to suggest that the Court

16 consider something please.

17     I have, as an example, prepared -- And the questions

18 are not necessarily sacrosanct, but assuming we would have

19 agreed questions, I have suggested a one-page juror

20 questionnaire that does not need to be Xeroxed or copied.  It's

21 done so that each juror would have one of these that has a

22 cardboard backing, and they fill it out, and then it's simply a

23 matter of tearing one off for the Court, tearing one off for

24 Mr. Walsh, and tearing one off for me, so that we would have a

25 little more information about the jurors.

1          And with the Court's permission, I'd like to hand

2    this -- an example of the way it's done, the presentation mode.

3    We've had trouble with questionnaires before from the

4    standpoint that you have to send them out to a copy machine,

5    and that takes time and all of that.

6          This method, it's intended to all be on one page.  It

7    doesn't take much longer for the jury to fill it out when

8    they're doing their forms before we start.  And there's no copy

9    to be done.  You just tear it off and give it to the Court and

10   to counsel.  So with respect, I would request the Court to

11   consider.  I know it may be a different form than we've seen

12   before.  It's kind of a new idea.

13         THE COURT:  You know, we typically don't use juror

14   questionnaires here because for the most part they're more

15   trouble than they're worth.  I find them, at least in my past

16   experience, that they can be useful in a case with prejudicial

17   advance pretrial publicity.  They can be useful in a capital

18   case in terms of trying to weed out those people who could not

19   participate in the imposition of the death penalty.

20         But in a case like this, it seems to me that they're

21   more trouble than they're worth.  I looked at your proposed

22   questionnaire.  I think it's attached as one of the exhibits to

23   your proposed pretrial order.

24         MR. MCCLANAHAN:  Yes, sir.

25         THE COURT:  Document 262.  And it's filled with

1   questions that I will not ask this jury.  And let me share this

2   thought with you so you'll at least understand why.  You may

3   not agree with me, but at least you'll understand that the

4   decision isn't arbitrary or capricious.

5       I believe that the purpose of voir dire is to select a

6   fair and impartial jury.  I know as a former advocate myself

7   that that is not the goal of lawyering.  The lawyer's goal is

8   to select a jury that is either advantageous to his client or

9   at least disadvantageous to the other side's client.  And the

10  peremptory strikes are used to try to achieve that result.

11      All the trial techniques, books tell lawyers to do

12  that, and they do that.  I don't just happen to agree with it.

13  We do have peremptory strikes, and I realize, therefore, that

14  voir dire is and can be extended beyond challenges for cause.

15  So I will ask more questions than simply those that would give

16  me an idea whether or not a juror would be challenged for

17  cause.

18      If it were a perfect world, I'd limit it to that.  I'd

19  probably adopt the British system and go out and get eight

20  people from the street, put them in the box, and say you're the

21  jury.  If we really want a fair cross-section of the community

22  with all its warts, that's what we would do.

23      But we don't do that in America.  We sandpaper them,

24  and we refine them, and we adapt them, and we argue to them.

25      So that's why I believe that voir dire should be both

conducted by the judge and be limited.  So, for example, in

your questionnaire you ask them to list three people you admire

most, three people you admire least, three adjectives that

you'd use to describe yourself.  What do you do in your spare

time?  Do you oppose the use of video cameras?  And so forth.

Have you ever thought a product was -- that you purchased was

falsely advertised?

This to me is conditioning and advocacy.  And I don't

think we should subject our jurors to that kind of invasion of

privacy.  I think all we want of our jurors is will you sit

here and listen to the evidence?  Would you find the facts in a

fair way?  And would you follow my instructions on the law?

So with no disrespect to you, I would be embarrassed

to ask jurors to list three people they admire most.  If I were

on a jury and a judge asked me that question, I'd say:  What in

God's name has that got to do with this unfair competition

case?  It's really none of your business who I admire.  It

might be Adolf Hitler, but do you think I want to say that in

front of 25 people?

So that's why I don't do this.

In addition, it would take time.  Even if we didn't

have a pretrial conference to go over them among the three of

us to weed out those whose answers might be disqualifying, it

would take time for them to do it, take time for you to read

them, take time for me to read them.

1       I find that it's a lot easier for me to just sit here

2  and listen to them.  I don't know that there's anything here on

3  this list that would cause the disqualification of a particular

4  juror.

5       These seem all to elicit information the answer to

6  which is probably not legally disqualifying.

7       So that's a kind of a long winded way to answer your

8  suggestion that we use this, but that's why we won't be using

9  it.

10       MR. MCCLANAHAN:  Thank you, Your Honor.  I totally

11  understand.  May I ask one more question?

12       THE COURT:  Yes.

13       MR. MCCLANAHAN:  You said eight jurors.  Will we have

14  a unanimous verdict?

15       THE COURT:  Yes.  In federal court it's a unanimous

16  verdict.

17       MR. MCCLANAHAN:  And if we lose any of them, how many

18  would you let deliberate?  Six?  Five?  Where do we end up?

19       THE COURT:  Well, under the Federal Rules, the jury

20  must consist of at least six people.  And so there are no

21  alternates on the civil side in contrast to the criminal side.

22       And so what we typically have done here -- and it

23  seems to have worked well -- is that I almost always select

24  eight in a civil action for two reasons.  One, that just

25  happens to be the size of juries across the street in the

1    Superior Court of Arizona.  And so there's rough comparability

2    between the federal and state system, especially for state

3    claims, although I realize that you have one federal claim here

4    and two state claims.

5            But, two, with having a jury of eight, I can lose two

6    of them, and we can still keep this case alive and well because

7    we only need six.  But the beauty of it is that if at the end

8    of the trial there are eight still standing, they all get to

9    deliberate, and it nevertheless must be unanimous.

10           MR. MCCLANAHAN:  I understand.  Thank you so much,

11   Your Honor.

12           THE COURT:  You're welcome.  And then let me --

13           The clerk, before we turn to Mr. Walsh, Mr. Mandel,

14   and Ms. Gottlieb, the clerk handed me a note that I did neglect

15   to ask you something.  Under our rules, we exercise the strikes

16   simultaneously unless the parties want to stipulate to

17   exercising them alternately.

18           Do either of you have a preference on that?

19           MR. WALSH:  Your Honor, I prefer to do them

20   alternatively if Mr. McClanahan is in agreement.

21           MR. MCCLANAHAN:  And my preference is simultaneous.

22           Whatever the Court likes to do, Your Honor.  As I said

23   before, I'm not trying to be difficult or anything.  If

24   Mr. Walsh wants to do alternative, that's fine with us.

25           THE COURT:  All right.  Then pursuant to the parties'

| | |
|---|---|
| 1 | stipulation, you can exercise your strikes alternately. |
| 2 | All right.  Then let me turn to Mr. Walsh from the |
| 3 | defense perspective.  Is there anything that we should go over? |
| 4 | MR. WALSH:  Several things briefly, Your Honor.  I |
| 5 | know briefly is a terrible word for a lawyer to use. |
| 6 | First of all, with all due respect to the Court, I |
| 7 | need to register the defendant's objection to the six-day trial |
| 8 | length.  When you had the first pretrial conference in this |
| 9 | matter, we asked for a lot more than nine days because we -- |
| 10 | THE COURT:  Well, you asked for 30 days.  Think about |
| 11 | that.  This is a simple claim in which the plaintiffs are |
| 12 | claiming that your client represented to various government |
| 13 | agencies that your radars were certified.  That's the case. |
| 14 | That's the whole case. |
| 15 | Now, of course there's a damage component to it, but |
| 16 | this should not be a complex case.  I've never had a trial in |
| 17 | this courthouse that lasted 30 days. |
| 18 | MR. WALSH:  Your Honor, I'm not asking for 30 days |
| 19 | now, but I am asking for 16 days.  And the reason why is we |
| 20 | have four experts on each side, probably four to six witnesses |
| 21 | minimum from the companies on each side, and there are |
| 22 | third-party witnesses from Tempe, the Department of Public |
| 23 | Safety, at least a couple of people from out of state, maybe |
| 24 | more than a couple of people, depending upon how many will |
| 25 | voluntarily come. |

UNITED STATES DISTRICT COURT

1          And just to think about trying to get those people in

2     in 30 hours of total trial time, it boggles my mind.  I mean, I

3     can't imagine how the jury is going to understand the evidence.

4          There are 11 jurisdictions left in the case.  They

5     need to decide as to each one of the 11 whether all five

6     elements of the claim have been met, not simply whether a false

7     statement was made, but whether it was deceptive, whether it

8     was material, whether it was relied upon, the causation

9     element, whether there were damages.

10         This is a -- This is a very complex case, and I've

11    tried probably 30 cases in federal and state court in my

12    career, and this is one of the most complex ones.

13         I'm worried about due process for my client because

14    this case could conceivably put my client out of business, and

15    they are providing a public service in the State of Arizona.

16         I realize some people don't feel that way, but right

17    now the legislature does and in other states as well.  And it's

18    a very, very serious case.

19         And to think that we're going to try it in six days, I

20    don't think I've tried a case in six days in awhile, except I

21    had a very small one in your courtroom a few years ago that we

22    got done in three or four days, and that was about the right

23    length of time for that case.  So we need to register that

24    objection.

25         I understand the Court has a different viewpoint, but

UNITED STATES DISTRICT COURT

1    I need to preserve that issue.

2           THE COURT:  All right.  Let me say this.

3           Your objection is overruled for the reason that I

4    think that even with those experts, that given the fact that

5    you've known at least since the Rule 16 conference that there

6    would be only nine days, that you would hire witnesses that

7    would exceed the amount of time allotted was an assumption that

8    you made.

9           Secondly, even if you want to use all those experts,

10   it seems to me that imposing time limits on counsel helps them.

11   It doesn't hurt them.  It helps their clients.  It doesn't hurt

12   their clients.  Because it will require you to really

13   streamline the presentation in a way that the jury can

14   understand it.  In my opinion, after doing this now for 25

15   years, jurors collectively believe that they've heard way too

16   much evidence, and it's cumulative and redundant, even though I

17   realize I've just been redundant.

18          They hear it in the opening statement of the

19   plaintiff.  They hear it in the opening statement of the

20   defendant.  They hear it on direct examination.  And when

21   you've got a bad cross-examiner, you hear it on

22   cross-examination.  You hear the same stuff from different

23   witnesses.  Then you hear the defense case.  And then you hear

24   the plaintiff's summation, and then you hear the defendant's

25   summation.

1      They're used to television.  They're used to 55

2  minutes, and the story's begun, and it's over.  They don't want

3  to hear it six times.

4      And so I think by these limitations that we impose,

5  which are limitations that are expressly authorized by Rule 16,

6  we do you a favor and a service by requiring -- For example,

7  you've got an expert.  He's produced his report.  You know what

8  the jugular is, you know.  Get in and get out.  Go to the heart

9  of the case and get out.  Go to the heart of the case and get

10 out.

11     Everyone will appreciate you and your client for it.

12 I think that's -- I think, given -- Although you call it a

13 complex case, there's three counts here, as I understand it; an

14 unfair competition count, an unjust enrichment count, and a

15 business expectation count.

16     My impression from the motion practice is that the

17 pendent state claims are almost throwaways.  So the question is

18 did they make these representations, and did it cause damage to

19 the plaintiffs?

20     To me it's a simple case, and it's been made complex

21 by the contentiousness of the parties in all the pretrial

22 practice and the motion practice.

23     But you've made your objection.  You've preserved your

24 point.  I've stated on the record why I believe that six days

25 is more than adequate for this case.  But you've got a second

1    point.

2         MR. WALSH:  The second point, Your Honor, is that we

3    may -- we should reasonably expect pretrial publicity about

4    this or trial publicity about this.

5         There's a Web site called camerafraud.com that tracks

6    and criticizes my client in this state.  I think there are

7    similar groups of people in other states that do the same to

8    Mr. McClanahan's client.

9         I expect that there are going to be people in the

10   courtroom from that group, probably from the mainstream media

11   as well because this is a matter of public interest, maybe not

12   the case, but the business we're in at least is a matter of

13   public interest.

14        And I'm concerned about cameras, surreptitious

15   recordings, information going out the door that witnesses or

16   jurors might see.  I know you're going to admonish the jurors

17   not to read anything and all, and I'm sure we can all admonish

18   the witnesses.  But this probably isn't going to be the typical

19   civil case, and I hope I'm wrong from a publicity viewpoint.

20        In connection with that, we've also got these

21   attorney's eyes only documents that we've talked about.

22        Neither party has submitted a motion to you asking you

23   to determine that documents really need heightened sensitivity

24   or heightened protection.  But there is a protective order in

25   place.  And I wanted to ask the Court for its idea -- and

```
1   perhaps we have some ideas as well -- as to how we're going to
2   handle if sensitive financial information or other competitive
3   information comes up.  Are we going to close the courtroom for
4   a few minutes?  How does the Court prefer to handle that?
5           THE COURT:  Well, as you noted in the order that
6   accompanied your protective order, your February protective
7   order, we expressly stated that the order did not authorize the
8   filing of any document under seal and that in order to do that,
9   you'd to have to satisfy the strict requirements of Kamakana
10  versus Honolulu.
11          I can't imagine that any of these financial records
12  are going to ever fit within the compelling interest standard
13  of that case.
14          This is a public courthouse.  This is a public
15  courtroom.  And the allegations that are made here involve
16  public entities.  And the citizens of this and other states I
17  assume have a right to understand the businesses of entities
18  doing business with public agencies.
19          So you can file motions, if you want to, to seal a
20  particular document, but the likelihood of it being granted is
21  pretty slim.
22          So I share that thought with you.  Read the Kamakana
23  case to see just how tight the standard is.  And I can't
24  imagine that we would ever close a courtroom in America.
25          MR. WALSH:  Thank you, Your Honor.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  All right.  I think we're all squared
2     away.  Last call in terms of any issues that we've neglected.
3     Anything from the plaintiff?
4          MR. MCCLANAHAN:  No, Your Honor.  Thank you.
5          THE COURT:  All right.  Anything from the defendants?
6          Anything from the defendants?
7          MR. WALSH:  Nothing further, Your Honor.  Thank you.
8          THE COURT:  Okay.  Kerry, anything from my end that I
9     may have neglected?
10         THE CLERK:  No, Judge.
11         THE COURT:  Okay.  Then I think we're all squared
12    away.  So be sure to call our courtroom deputy because I don't
13    want to disadvantage you on this conflict.  It happens once or
14    twice a year where we have two going on the same day.
15         And so give her a call by next Wednesday.  If that
16    other case hasn't settled by then, we can put you off until
17    Tuesday, the 18th.  Okay?
18         Okay.
19      (Proceedings recessed at 4:16 p.m.)
20
21
22
23
24
25

1        **C E R T I F I C A T E**

2

3           I, LINDA SCHROEDER, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6           I FURTHER CERTIFY that the foregoing pages constitute

7    a full, true, and accurate transcript of all of that portion of

8    the proceedings contained herein, had in the above-entitled

9    cause on the date specified therein, and that said transcript

10   was prepared under my direction and control.

11          DATED at Phoenix, Arizona, this 3rd day of May, 2010.

12

13                                    s/Linda Schroeder
                                 _____
14                                    Linda Schroeder, RDR, CRR

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT