**GREENBERG TRAURIG, LLP**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

E. Jeffrey Walsh, WalshJ@gtlaw.com, SBN 009334
Robert A. Mandel, MandelR@gtlaw.com, SBN 022936
Frank G. Long, LongF@gtlaw.com, SBN 012245
Stacey F. Gottlieb, GottliebS@gtlaw.com, SBN 015084
*Attorneys for Defendant Redflex Traffic Systems, Inc.*

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ARIZONA

| | |
|---|---|
| American Traffic Solutions, Inc., *Plaintiff,* vs. Redflex Traffic Systems, Inc. *Defendant.* | Case No. 2:08-CV-02051-PHX-FJM **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REDFLEX TRAFFIC SYSTEMS, INC.'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS** (Assigned to the Honorable Frederick J. Martone) **(Oral Argument Requested)** |

Defendant Redflex Traffic Systems, Inc. ("Redflex"), the prevailing party in this action, filed its Motion for Attorneys' Fees and Non-Taxable Costs on June 11, 2010 [Dkt. 322] ("Motion") seeking attorneys' fees and non-taxable expenses. Redflex here supports that Motion with this Memorandum of Points and Authorities and accompanying Affidavit of E. Jeffrey Walsh ("Walsh Aff.") with supporting attachments [Ex. 1], Declaration of Andrejs Bunkse ("Bunkse Decl.") [Ex. 2], relevant portions of the record and other supporting exhibits.

## INTRODUCTION

This case represents the paradigm of groundless, unreasonable and vexatious Lanham Act litigation, pursued in bad faith. Plaintiff American Traffic Solutions, Inc. ("ATS") filed an Original Complaint against its competitor, Redflex, seeking, in its words, "over $100 million in damages" under the Lanham Act for alleged false advertising to "at least" 32 public jurisdictions (later expanded to more than 36 jurisdictions) throughout the United States. ATS pursued its claims knowing that it did not have a good basis for doing so. After receiving this Court's April 22, 2010 summary judgment order dismissing 25 of the 36 claims, ATS's general counsel, George Hittner, confessed to Andrejs K. Bunkse, Redflex's general counsel, that ATS "always

knew the number of cities at issue would be reduced." [Ex. 2 (Bunkse Decl.) at ¶ 5] ATS then narrowly avoided losing the balance of its case on a motion for judgment as a matter of law at trial and suffered a defense verdict from the jury after less than an hour and a half of lunch-interrupted deliberations.

ATS's claims were unjustified in large part because ATS lacked standing, in that it asserted claims based on contracts with jurisdictions as to which ATS had never competed. ATS also complained about jurisdictions where ATS's bid was not in the final group for consideration, where its bid did not finish second, and where its bid had been disallowed. Moreover, ATS complained about jurisdictions where the public entity never contracted for photo radar, the only traffic enforcement service as to which ATS contended Redflex had engaged in false advertising. At least 30 of the 36 jurisdictions fell within one of those disqualifying categories, as ATS knew before it brought this action.

Globally, ATS never presented evidence that Redflex had misrepresented to any jurisdiction that the radar unit Redflex used was, at the time of bid, certified by the FCC. The statements ATS complained of related to Redflex's promises to jurisdictions of post contract award compliance with applicable transportation laws governing highway and roadway construction, or to statements that Redflex had not engaged in corrupt practices during bidding; they did not address compliance with FCC law. And ATS's case that Redflex had falsely stated that its photo radar had IACP certification was hardly mentioned at trial and had no basis in fact.

The extraordinarily unfounded nature of ATS's case was aptly summarized by the Court when it ruled on Redflex's Rule 50 motion at the close of ATS's case:

> I think the, at best, at the very best, the plaintiff here has an **extraordinarily weak case**. I think at every level of the process, whether one looks at liability or damages, whether one looks at public dissemination, whether one looks at standing, particularly with respect to about six of the entities, with respect to the question of deception, with respect to questions of materiality, causation, it's weak at every point. And this is one of those cases where I should expect the strong likelihood of a defense verdict.
>
> . . . And this is one of those cases in which the uncertain and fuzzy nature of the law in this area together with the investment the parties have made already suggest to me that although, in the

> best interest of all worlds, I would suggest that the plaintiff has no case. That due considerations of the administration of justice would suggest that we give this case to the jury.
>
> That has some advantages. If the jury, as I suspect, returns a defense verdict, then most of the uncertainty is resolved. If it does not, then we can contend with these uncertain and marginal issues on a renewed Rule 50 motion since its denial at this stage of the proceedings simply is construed under Rule 50 as deferring the ultimate decision until a verdict is in.

[Dkt. 355 at 814:2-11, 15-25, 815:1-6]

This case falls within the group of extraordinary Lanham Act cases that warrant an award of Redflex's attorneys' fees and costs on all of ATS's federal and state claims under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117. Redflex's incurred fees and costs were reasonable under the circumstances, and it therefore asks that they be awarded in full.

## ARGUMENT

### I. REDFLEX, THE PREVAILING PARTY, IS ELIGIBLE TO RECOVER ITS ATTORNEYS' FEES AND COSTS UNDER THE LANHAM ACT.

#### A. Judgment Has Been Entered in Redflex's Favor on All of ATS's Claims.

ATS initiated this lawsuit on November 4, 2008 by filing an Original Complaint seeking damages from Redflex on three causes of action: (1) false representations under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) tortious interference with business expectancy; and (3) unjust enrichment. [Dkt. 1] Redflex prevailed on each of these claims. ATS filed no post verdict motions, and the Clerk of the Court entered judgment in Redflex's favor on May 28, 2008 [Dkt. 321] ATS filed its notice of appeal on June 28, 2010. [Dkt. 326, 327]

#### B. The Lanham Act Permits This Court To Award Fees Where Plaintiff's Case Was Either Groundless, Unreasonable, Vexatious or Pursued in Bad Faith.

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), provides that "the court in exceptional cases may award attorneys fees to the prevailing party." This requirement is met in the Ninth Circuit where "the case is *either* groundless, unreasonable, vexatious *or* pursued in bad faith." *Cairns v. Franklin Mint Company*, 292 F.3d 1139, 1156 (9th Cir. 2002) (emphasis added, internal citations and quotations omitted). The prevailing party in a Lanham Act case is required to show only one of the "exceptional case" elements to be entitled to an award of its attorneys'

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

fees. *Id.*, 292 F.3d at 1156. This case meets all of those tests.

While the losing party's bad faith may provide evidence that the case is exceptional, a showing of bad faith is not required because "other exceptional circumstances may warrant a fee award." *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1217 (9th Cir. 2003) (citation omitted) citing *Stephen W. Boney, Inc. v. Boney Serv., Inc*., 127 F.3d 821, 827 (9th Cir. 1997)); *Door Sys. Inc. v. Pro-Line Door Sys., Inc.,* 126 F.3d 1028, 1032 (7th Cir. 1997) ("[A] suit can be oppressive because of lack of merit and cost of defending even though the plaintiff honestly though mistakenly believes that he has a good case and is not trying merely to extract a settlement based on the suit's nuisance value"). Pursuing claims that lack substantial factual support as a bargaining tool unnecessarily drives up the costs of litigation and "constitutes grounds for finding a case exceptional and awarding attorneys fees pursuant to Section 35(a)." *Skydive Arizona Inc. v. Cary Quattrochi*, No. CV-05-2656-PHX-MHM, 2010 WL 1337722 at *16 (D. Ariz. March 31, 2010); *see also*, *Cairns*, 292 F.3d at 1156.

### C. Redflex Is Eligible for an Award of Its Attorneys' Fees on All of ATS's Federal and State Claims.

Redflex has met the eligibility requirements of LRCiv 54.2, by attaching to this Memorandum its Affidavit of E. Jeffrey Walsh with a Statement of Consultation [Attachment L to Walsh Aff.], a copy of its Fee Agreements with counsel [Attachment G], Task-Based Itemized Statements of Fees and Expenses [Attachments D, E, F], the Declaration of Andrejs Bunkse [Ex. 2], various excerpts from the record and other supportive documents.

### D. Redflex Is Eligible for an Award of Its Non-Taxable Costs.

Redflex submitted on June 11, 2010 its Bill of Costs by which it sought an award of its taxable costs. Redflex was awarded, on July 23, 2010, taxable costs in the amount of $73,125.60 pursuant to 17 U.S.C. §§ 1920 and 1821. [Dkt. 341] Redflex is also entitled to an award of its non-taxable costs under 15 U.S.C. § 1117(a).

Redflex is aware that this Court has previously held that non-taxable costs are not recoverable under 15 U.S.C. § 1117(a). Redflex respectfully disagrees. Section 1117(a) provides that the prevailing party in an extraordinary case may be awarded "costs of the action." Awarding

- 4 -

such non-taxable costs, another district court considering that language held "The goal, after all, is to ensure that all of the outlays associated with a particular legal dispute are recovered by the prevailing party who seeks an award of fees." *Hickory Favors, Inc. v. Snackmasters*, No. 05 C 4541, 2008 WL 4542961 at *10, 13 (N.D. Ill Apr. 2, 2007) citing *Tri-Star Pictures Inc. v. Unger*, 42 F.Supp. 296, 306 (S.D.N.Y. 1999)). Other courts have awarded non-taxable costs to the prevailing party under the Lanham Act. *World Triathalon Corp. v. Dubar*, 539 F.Supp.2d 1270, 1290 (D. Haw. 2008) ("While none of these costs [postage/shipping costs, airfare and other travel expenses] are expressly provided for in § 1920, the more general clause in § 1117(a) entitled Plaintiff to an award of the remaining costs."); *JTH Tax Inc. v. H & R Block Eastern Tax Svcs., Inc.*, 128 F.Supp.2d 926, 947 (E.D.Va. 2001); *SNA, Inc. v. Array*, 173 F.Supp.2d 347, 353 (E.D.Pa. 2001); *Ty, Inc. v. Softbelly's, Inc.*, No. 00 C 5230, 2007 WL 734394 at *1, 3 (N.D. Ill. Nov. 6, 2007).

The Ninth Circuit's decision in *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869 (2005) is not inapposite (awarding non-taxable costs where Section 505 of the Copyright Act specifically provided for an award of "full costs").

## II. REDFLEX IS ENTITLED TO AN AWARD OF ITS ATTORNEYS' FEES AND COSTS ON ALL CLAIMS.

### A. ATS's Claims Were Groundless, Unreasonable, Vexatious and Pursued in Bad Faith, Any One of Which Circumstances Entitles Redflex to Its Attorneys' Fees and Costs.

ATS pled and pursued claims on which it knew it could not prevail. Before filing its Complaint, for example, ATS knew that it never competed in business in many of the jurisdictions, that it did not place second in some of them, that its bid had been rejected in yet others, and that in some of the jurisdictions the contracts it bid on did not include mobile photo radar services, the only services as to which ATS contended Redflex had made any false advertising statements.

ATS utterly failed to present any substantial evidence at trial that Redflex had engaged in false advertising as to any of the eleven remaining jurisdictions, that any of them were actually deceived about FCC or IACP compliance by the statements Redflex made about intending to

- 5 -

comply with applicable laws if and when it was awarded contracts, that preexisting FCC or IACP certification was material to any of the jurisdictions' contract awards, that ATS actually would have won any of the subject contracts if Redflex's bid had been rejected, or that ATS suffered any damages.

The Court put the parties on notice early in the case that ATS's Lanham Act claims would need to be based on evidence that DPS (and presumably any other contracting entity) was "actually misled" by Redflex's bid proposals. [Dkt. 52 at 4]  Redflex therefore sought leave of court to depose officials from the various jurisdictions. [Dkt. 164] ATS vigorously opposed that discovery and conducted no discovery itself to ascertain whether any of the jurisdictions had been "actually misled." ATS's refusal to call witnesses from any of the jurisdictions to testify on its case in chief was, in itself, extraordinary, since such persons were, as the Court noted at trial, the only witnesses with the foundation to testify about whether they had been "actually deceived" [Dkt. 52 at 4] and whether ATS would have won the contracts if Redflex had been disqualified. ATS therefore had no reasonable basis to maintain its claims, and had actual knowledge that they were without merit.

ATS attempted at trial to prove its case upon the speculation of its CEO, James Tuton, who opined that ATS *would have been* awarded all of the traffic enforcement contracts Redflex won *if* Redflex's bid had been rejected. [Dkt. 330 at 169:4-170:17, 230:3-231:3] Yet, on ATS's cross-examination of Redflex's witnesses, contracting officers Lu Himmelstein (DPS) and David Beams (Oak Ridge), those witnesses stated, as they had in the past, that they were never deceived by any statement Redflex had made, that Redflex's proposals did not contain false statements that they did not believe any of Redflex's statements to be false or misleading, that they did not deem Redflex's proposals to be commercial advertisements, and that ATS would not necessarily have been awarded contracts by those jurisdictions even if the lack of FCC certification issue had been disclosed at bid time. [Dkt. 336 at 946-47, 951-52, 957-58, 961, 965-67, 971-72, 986, 1057-66, 1075] ATS could have interviewed these witnesses, and others before filing its complaint, or taken their depositions. [Dkt. 336 at 1016-17, 1074] But as the Court and the jury learned at trial,

ATS's counsel never spoke to either of them to learn what they knew.[1]

James Tuton also did not support his company's Lanham Act claims. He instead conceded on cross examination at trial that his company's disagreement with Redflex was not about representations Redflex supposedly made to jurisdictions about FCC or IACP certification; it was about an alleged "bait and switch" offer to DPS involving Multinova radars. [Dkt. 330 at 202:16-25] But that theory had no legs either. DPS's chief contracting officer, Lu Himmelstein, had made it clear in her letter to ATS's counsel explaining rejection of ATS's bid protest in September 2008 that neither Redflex nor ATS had bid a particular brand of radar; each instead had proposed traffic enforcement services that met specified performance standards and so that left either of themselves free to use any radar. [Ex. 3 (Letter to J. Grabel from L. Himmelstein) at ATS003230-43] Ms. Himmelstein reiterated that statement at trial. [Dkt. 336 at 984:15-20]

ATS told the jury that its complaints were rejected by DPS and the FCC, and that ATS did not pursue its appeal before the DOA, because ATS needed the power of the federal court's discovery rules to prove its claims. [Dkt. 337 at 1196:8-25] But this was mere dissembling. ATS always had access, through public records requests, to Redflex's proposals to each jurisdiction. After putting Redflex through broad discovery relating to 36 jurisdictions, the only documents that ATS could point to at trial to support its claims were those same, publicly available proposals that contained no false statements.[2] ATS did not want discovery to get at the truth; it wanted simply to falsely paint Redflex as an evil Australian corporation that should be punished by the jury.

ATS also put on no case for damages. ATS first proposed to call Redflex's damages expert, Steven Clarke, in its case-in-chief. When the Court sustained Redflex's objection and refused to let ATS call Mr. Clarke, ATS then chose not to call to the stand its retained damages

---

[1] Redflex interviewed as many jurisdiction representatives as possible. After conducting interviews, Redflex presented declarations from eight of the jurisdictions as part of its summary judgment motion in December 2009. The declarations presented were: DPS, Oak Ridge, Parma, Tacoma, Zachary, Clarksville, Auburn, and Lakewood. For want of a few phone calls, the Court, eight jurors, and many lawyers and paralegals were put to two weeks of labor at trial for no good reason. ATS was never prepared to prove its case as to DPS or any other jurisdiction.

[2] The Court dismissed on summary judgment ATS's claims for false advertising at trade shows or in press releases. [Dkt. 253 at 6-7]

consultant, Dr. Ingberman. ATS instead had its chief financial officer, Adam Draizin, simply read Redflex's revenue numbers into the record, and multiply each of them by a .53 EBITDA factor.[3] [Dkt. 335 at 780:10-13] Mr. Draizin admitted that ATS's net profits were lower than its EBITDA, but he could not tell the jury what they were. [Dkt. 335 at 782:5] He also admitted that he had not done a net profits analysis. [Dkt. 335 at 782:16-21] He further admitted that he had not calculated the amount of any unjust enrichment to Redflex. [Dkt. 335 at 782:22-24] Finally, Mr. Draizin conceded that "I'm not an expert on lost profits damage claims." [Dkt. 335 at 783:23 - 784:1]

The Court, reflecting on this paucity of evidence of damages, noted that:

> There are, again, issues about damages. I mean what we have heard so far on the question of damages in most cases would be pitifully inadequate, but in this case, where plaintiff would be, assuming it was able to prove liability, entitled to at least nominal damages, even that is something that would go to the jury.

[Dkt. 335 at 815:7-13] Assuming ATS could prove up the other elements of false advertising, it was *ipso facto* unreasonable for it to pursue an extremely expensive "no damages" case when it sought no injunctive relief.

ATS chose to use the courtroom as a forum to embarrass Redflex by, under the guise of proof of willfulness, accusing Redflex officials of lying to federal and state authorities. ATS provided salacious fodder for bloggers and other media personnel who attended the trial and damaged Redflex's reputation and integrity.

ATS focused at trial almost exclusively on attempting to prove "willfulness" so it could avail itself of presumptions of materiality and deception. This strategy, combined with ATS's lack of due diligence and unyielding expansion of the case, forced Redflex to gather its own evidence to negate the elements of ATS's claims. This was an extraordinarily expensive task. It required Redflex to delve into records both in Arizona and with its affiliate in Australia, and to interview officials at many jurisdictions and obtain affidavits from a number of them.

---

[3] EBITDA is an acronym for "Earnings Before Interest, Taxes, Depreciation or Amortization" are taken into account.

Redflex made repeated efforts to limit the case to contracts for photo radar, but ATS refused to do so. [Ex. 1 (Walsh Aff.) at ¶ 19] ATS deliberately and unreasonably maintained claims concerning 36 jurisdictions. To develop the facts for summary judgment and trial, Redflex was therefore compelled to launch into a complex, document-intensive, and fact-filled discovery process, including taking and defending 20 depositions, and crafting and negotiating over 64 requests for production, 22 non-uniform interrogatories, and 45 requests for admission, and deal with ATS's objections and responses to them. To compile, review and produce the broad categories of documents that ATS requested, Redflex spent thousands of hours to search millions of pages of its business records for information concerning each of the 37 contracts in 36 jurisdictions. Although most of Redflex's documents were in electronic format, the scope of ATS's requests, even after objection, were so broad that Redflex, its counsel and its consultants had to review hundreds of thousands of pages of records to properly meet Redflex's discovery obligations. [Ex. 1 (Walsh Aff.) at ¶ 20] The record reflects that ATS conducted no such comparable investigation to satisfy its disclosure and discovery obligations, and ATS was thereby able to saddle Redflex with wildly asymmetrical expenses. [Ex. 4 (30(b)(6) Deposition of Amy Rasor) at 6-24]

ATS instead dumped approximately 65,000 pages of meaningless documents on Redflex, many of which related to contracts at jurisdictions, such as Seattle, that ATS never intended to pursue to the action. This tactic added many hours of work for Redflex's employees and its counsel.

Although ATS never formally amended its Original Complaint, it disclosed, months into discovery, that it intended to pursue claims as to at least six additional jurisdictions not in its pleading: Eloy, Arizona; Paradise Valley, Arizona; Fort Collins, Colorado; Westwego, Louisiana; Hamilton, Ohio, and Clarksville, Tennessee. It apparently decided to eliminate three jurisdictions out of the original 32 in the complaint: Davenport, Iowa; Alexandria, Louisiana, and Vancouver, Washington, although Redflex was never given confirmation of that. This also drove up the cost of the litigation.

ATS engaged in abusive expert witness tactics. ATS identified four experts and produced reports from each of them. Redflex, in response, was compelled to identify and hire five rebuttal experts of its own, and to depose ATS's experts. Yet ATS called only one of these experts at trial, Michael Keeling; he was on the stand only briefly, and he said little, if anything, relevant to the case.

Particularly egregious is that ATS retained Daniel Ingberman, Ph.D. ostensibly to make out a damages case. ATS in its damage disclosure and in response to Redflex's discovery requests referred to Dr. Ingberman's 250 pages of reports and charts. [Ex. 5 (Plaintiff's First Amended Responses to Fourth Set of Interrogatories) at 2-8] Redflex incurred a large amount of attorneys' fees and costs preparing for, travelling to, and taking Dr. Ingberman's deposition in Palo Alto, California, as ATS refused to accept a subpoena for him, or to make him available for a deposition in Phoenix. Redflex also spent many hours preparing to respond to Dr. Ingberman's expected testimony (including fees and expenses Redflex spent on a rebuttal damages expert). ATS obviously retained Dr. Ingberman, simply to drive up Redflex's costs of litigation.

**B.     ATS's case was groundless and unreasonable.**

While there is no bright line test for determining what constitutes a groundless or unreasonable claim, the Ninth Circuit has provided guidance. A claim is "groundless," where a party has proceeded to trial but presented "no evidence of confusion or damages, basic elements of any Lanham Act claim." *Societe Civile Succession Richard Guino v. Renoir et al.*, 305 Fed.Appx. 334, 338 (9th Cir. 2008). It is "unreasonable" for a plaintiff to refuse to dismiss a claim early in the proceeding once it knows that there is no evidence to support it. *Cairns*, 292 F.3d at 1156. Here, the Court tossed ATS's claims as to 25 of the 36 jurisdictions, claims that ATS's general counsel conceded should never have been in the case. ATS presented no evidence of public entity confusion about FCC compliance because it called no jurisdictional witnesses to testify. ATS presented no evidence of damage causation because it failed to present competent testimony that it would have been awarded any of the contracts if Redflex's bid had been rejected. ATS presented no evidence of its lost profits, or the amount of unjust enrichment to

Redflex, and thus no evidence of damages.

A claim is also "groundless" where a party does not try to prove its claims, but waits until trial to abandon them. And ATS dropped two of the eleven jurisdictions at closing argument. *Societe Civile*, 305 Fed. Appx. at 338; *Skydive Arizona Inc.*, 2010 WL133772, at *14 (counterclaims abandoned after opening statements justified finding that case was exceptional). The merits of the claim, for example whether an alleged false statement is actually true, is also a factor. *See, e.g., Cairns,* 292 F.3d at 1156 (false advertisement claim was "groundless and unreasonable" because the advertising statements at issue were true and there was no reasonable basis to believe they were false).[4]  ATS presented no evidence that Redflex made any false statements in its proposals about its radar being FCC certified or any false statements about the extent of IACP certification of its photo enforcement systems.

Merely surviving summary judgment on 11 of 36 claims is not sufficient to avoid an award of attorneys' fees under the Lanham Act. *Lorillard Tobacco Co. v. Engida*, 556 F.Supp.2d 1209,1216 (D.Colo. 2008) (recognizing that the attorneys' fees provision in the Lanham Act compensates prevailing defendant for expenses incurred in successfully defending against plaintiff's oppressive and vexatious claims).

### C. ATS's case was vexatious.

Courts have drawn an inference of vexatiousness in Lanham Act cases where the losing party used its resources to hinder a competitor's business ventures. *See, e.g., Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d, 137, 144 (4th Cir. 2000) (holding that relevant factors to the exceptional case requirement include "economic coercion"); *Mennen Co. v. Gillette Co.*, 565 F.Supp. 648, 657 (D.C.N.Y. 1983). That test is also met here. ATS unleashed a crusade against Redflex, its biggest competitor in the photo traffic enforcement industry, to damage it. ATS released statements to the press when it learned that the AGD-340 radar that Redflex was using was not FCC certified. [Ex. 6 (Press Release, Nov. 19, 2008)] ATS filed a lawsuit in

---

[4] *See also, Sears, Roebuck and Co. v. Menard, Inc.*, No. 01 C 9843, 2004 WL 2423964 (N.D. Ill. Sept. 23, 2004) (awarding approximately $2.5 million in attorneys' fees to prevailing defendant where plaintiff's trademark case was "so lacking in merit" as to be "exceptional").

Arizona state court challenging the DPS award even though its experienced counsel, Snell and Wilmer, knew it was not warranted, as ATS had not then pursued, much less exhausted, its administrative remedies. [Ex. 7 (Verified Complaint, dated July 30, 2008)] ATS mounted an unsuccessful bid protest with DPS and then appealed it to the DOA, an appeal ATS dropped only after Redflex had spent substantial sums preparing to defend itself.[5] ATS also filed two complaints with the FCC, one on the AGD-340, the other on the Multanova DRS-3, a radar ATS was no longer using.[6]

ATS sued in this Court both Redflex and two of Redflex's executives, Karen Finley and Aaron Rosenberg. ATS then dismissed Finley and Rosenberg after taking their depositions, having never had a good faith basis to sue them in the first instance. [Dkt. 156]

Redflex learned for the first time at trial that ATS was basing its case regarding the other jurisdictions entirely on promises of compliance with the laws relating to post-award *construction* work and uniform traffic signal phasing and timing regulations. "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (recognizing that even where an ad is not literally false and plaintiff seeks to prove that the consuming public has been misled, confused or deceived, "[r]eactions of the public are typically tested through the use of consumer surveys"). All of the statements ATS alleged to be false were taken out of context, and had nothing to do with FCC certification, IACP certification, or mobile radar devices. [Dkt. 330] ATS never showed that any of the jurisdictions interpreted those statements in the way ATS contended.

### 1. ATS's case was brought in bad faith.

ATS acted in bad faith. Redflex deposed ATS's Rule 30(b)(b) witness, ATS executive vice president and chief operating officer Adam Tuton in January 2010. He admitted that he was unable to identify *any* false statements that Redflex had purportedly submitted to jurisdictions

---

[5] [Ex. 8 (Letters to R. Martin, L. Himmelstein and J. Clark from J. Grabel) at ATS004074, ATS00034-00046, and ATS001253-001255; Ex. 9 (Notice of Withdrawal)]
[6] [Ex. 10 (Letters to R. Laforge from P. Underhill) at ATS002824-002825 and ATS003115-003116]

other than DPS. [Ex. 11 (30(b)(6) Deposition of Adam Tuton) at 34-36, 44-47]

ATS made no credible showing at trial that it was vindicating legal rights. Instead, ATS employed the legal system to engage in unfair competition by other means. Retaining two contingent lawyers to hold down its own costs, it unleashed a torrent of expenses to hobble Redflex in pursuing its business. ATS's lack of evidence cannot be blamed on inexperience or lack of preparation by ATS's counsel, McClanahan, Myers and Espey, who tout on their website their expertise in Lanham Act and other business tort cases. Yet ATS presented no credible case at trial. Perhaps no clearer proof of bad faith pursuit of a Lanham Act claim could exist.

## III.   REDFLEX'S FEE REQUEST IS REASONABLE.

### A.   The Court Should Award Fees Under the Lanham Act on Intertwined Claims Asserted Under Arizona Law.

An eligible party may be awarded its attorneys' fees on non-Lanham Act claims in a Lanham Act case where, as here, the factual and legal bases of those claims are substantially identical to the Lanham Act claims, such that apportionment of Redflex's efforts to defend each of them would be impossible. *Gracie v. Semaphore Entm't Group*, 52 Fed.Appx. 43, 44 (9th Cir. 2002). Here, the factual and legal bases of ATS's state law claims and Lanham Act claims were inseparable, making it impossible to apportion fees between the claims.

ATS's first cause of action for false advertising under the Lanham Act was the sole focus of its efforts in the case and at trial. And elements of its Lanham Act claim also had to be proven to establish its state law claims for tortious interference and unjust enrichment, such that the facts necessary to prove the state law claims were inextricably intertwined with the false advertising claims.

### B.   The Court Should Award Redflex the Total Fees Requested.

ATS, in its second cause of action, alleged that Redflex had tortiously interfered with ATS's business expectancy with each jurisdiction. The alleged interference by Redflex, a competitor, must have an "improper motive" to be actionable. *See Bar J Bar Cattle Co., Inc. v. Pace*, 158 Ariz. 481, 485, 763 P.2d 545, 549 (Ct. App. 1988) (motive not "improper," if purpose is to advance own economic interests). Mere competition for business is not an improper motive.

*Id.*; *see also*, Restatement (Second) of Torts § 768(1)(d) (1979). ATS contended in its Original Complaint that Redflex's "false advertising" constituted the improper conduct on which its tortious interference claims were based. The elements of ATS's Lanham Act claims overlapped exactly its tortious interference claims, as proof of one was necessary to prove the other. ATS's counsel did not discuss the elements of this claim in his opening statement or his closing argument, and ATS presented no separate evidence about it. Because ATS failed to prove its Lanham claims, its tortious interference claims also failed.

ATS claimed in its third cause of action that Redflex was unjustly enriched on the same 37 contracts in 36 jurisdictions.[7] Lack of justification for the alleged enrichment is an element of the tort. In addition, unjust enrichment is an available remedy under Section 35(a) of the Lanham Act. Thus, the Court instructed the jury that to establish lack of justification, ATS had to prove its false advertising claim. [Dkt. 337 at 1295]

Redflex spent no attorneys' fees to separately defend tortious interference and unjust enrichment claims. All of the efforts of Redflex's attorneys were focused on defending against the Lanham Act claim. No apportionment or reduction of Redflex's incurred fees as to the other claims would be possible. Redflex is thus eligible for an award of its attorneys' fees on all of ATS's state and federal claims under the Lanham Act alone. *Gracie v. Semaphone Entm't Group*, 52 Fed.App. at 46 (9th Cir. 2002); *Gracie v. Gracie*, 157 Fed. Appx. 967, 968 (9th Cir. 2005).]

The reasonableness of Redflex's fee request is explained in detail in the attached Walsh Affidavit, which addresses the relevant factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975).[8] [Ex. 1 (Walsh Aff.) at ¶ 21] Several factors stand out. First, much of the work that Redflex performed was necessitated by the vexatious litigation conduct of ATS

---

[7] To sustain its claim for unjust enrichment under Arizona law, ATS was required to establish: (1) an enrichment to the defendant; (2) plaintiff's impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy. *Community Garden Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995).

[8] "The court need not consider all [of the *Kerr*]…factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Kessler v. Assoc. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n. 1 (9th Cir. 1981).

and its attorneys. Second, the Lanham Act is, as this Court notes, a fuzzy and uncertain area of the law. The nature of the issues ATS raised in this litigation required Redflex's counsel to conduct substantial research at multiple points in the litigation, and to confer with lawyers and consultants who practice in an array of disciplines, including Lanham Act consulting, government procurement, FCC regulation, and electronic discovery. Third, the hourly fee agreement between Greenberg Traurig LLP ("GT") and Redflex supports the reasonableness of the fee award.[9] The hourly rates of the attorneys on this case are consistent with the rates charged by other law firms and attorneys with similar experience and qualifications in the community. [Ex. 1 (Walsh Aff.) at ¶¶ 8, 13] Fourth, Redflex is not seeking all of the fees it was billed in this matter. Rather, it has excluded or reduced several categories of fees. [See generally, Ex. 1 (Walsh Aff. at ¶¶ at 14-15] Fifth, the fees requested are reasonable in view of the outcome of complex litigation in which Redflex believed its corporate existence was under attack.

*Prevailing Market Rates for Comparable Legal Services.* Redflex's agreement to pay GT's hourly rates is set forth in the Fee Agreement. [Ex. 1 (Walsh Aff.) Attachment G (Fee Agreement)] The Walsh Affidavit sets forth the basis on which GT billed Redflex pursuant to that agreement and establishes the reasonableness of the billing rates and time billed as reflected in the itemized statement of costs. [Ex. 1 (Walsh Aff.) at ¶¶ 9-14, Attachments D, E and F (Task-Based Itemized Statements of Fees and Expenses)]   The billable hourly rates for Redflex's legal team are commensurate with the prevailing Phoenix market rates among firms of comparable size and sophistication for similar work. [Ex. 1 (Walsh Aff.) at ¶ 8]  The rates charged were also reasonable in light of counsels' abilities, training, education, experience, skill, and professional standing, the intricacy, novelty and difficulty of the issues raised and the work performed by counsel, the time and skill required to perform that work, the responsibility imposed and the

---

[9] Where such agreements are used, "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by [the] reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, in complex cases involving multiple attorneys and thousands of hours worth of time, a party's fee application is deemed to be the reasonable starting point where, as here, it has made a good faith effort to exclude from the fee request any hours that are excessive, redundant or otherwise unnecessary. *Cairns*, 292 F.3d at 1157.

excellent results obtained. [Ex. 1 (Walsh Aff.) at ¶¶ 2-6] Redflex availed itself of a proffered 10% discount on those fees by paying its counsel's invoices within 25 days of receipt. [Ex. 1 (Walsh Aff.) at ¶ 14]

The reasonableness of the hourly rates agreed upon -- and paid -- by Redflex is supported by third-party empirical evidence. According to the PriceWaterhouse June 2009 "Billing Rate and Associate Salary Survey," hourly rates for the first quarter of "Phoenix Large" firms in Phoenix range from an average of $491 to a high of $625 for equity partners, from an average of $423 to a high of $508 for non-equity partners, and from $266 to $364 for associates. The median hourly rate for of-counsel at comparable Phoenix firms is approximately $455 per hour. The survey also shows that paralegal rates at the same firms in the Phoenix market range from an average of $174 to a high of $211 per hour. [Ex. 1 (Walsh Aff.) at ¶ 23] All of these rates are consistent with or higher than the rates charged to and paid by Redflex in this matter.[10]

*The Novelty And Difficulty Of The Questions Involved And The Skill Requisite To Perform The Legal Service Properly.* Redflex's counsels' billable hours are reasonable in light of the complexity, intensity and duration of the litigation and the amount at stake. This Court, having presided over the trial, has commented on the challenging issues the Lanham Act raised, the nature of this case, and the excellent performance of trial counsel. The number of hours expended to litigate the matter correspond with the difficulties and challenges encountered by counsel, discussed above. [Ex. 1 (Walsh Aff.) at ¶¶ 19-20] Counsel for Redflex was required, inter alia, to make a substantial commitment of time and effort to the case.

Redflex had to hire an experienced legal team that could dedicate a substantial amount of time to the case. This precluded some of the attorneys on the team from taking on new engagements and from working on existing engagements from time to time, especially in the months preceding and during trial. Redflex's trial team from GT had a combined experience of conducting more than 50 civil and criminal trials - experience that is rare in today's environment,

---

[10] The Survey, which the undersigned have reviewed, is subject to a confidentiality agreement between PriceWaterhouse and the firms that receive it, but, if the Court requests, a copy can be provided for in-camera inspection.

1  especially at large firms. [Ex. 1 (Walsh Aff.) at ¶ 22]

2  Redflex's requested reward of attorneys' fees here is similar to awards granted in like cases. In *Cairns*, for example, the Ninth Circuit affirmed an award of attorneys' fees in the amount of $2,308,000, finding the amount reasonable under the circumstances. *Cairns*, 292 F.3d at 1158-59. In considering attorneys' fees awards in similar cases, the court opined that "the amount in controversy in those cases cannot be ignored" and "'the unprecedented size of the award' does not automatically make it unreasonable." *Id.* at 1158, citing *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560-61 (9th Cir. 1996). The *Cairns* court held that where plaintiffs sought damages of over $32 million on its Lanham Act claims, an award of $2,308,000 in attorneys' fees (a 14:1 ratio) was reasonable.[11]  Of note, *Cairns* concluded at the summary judgment stage, never reaching the time-consuming and expensive pre-trial and trial phases.

Here, ATS sought damages of over $100 million in its Complaint, providing a damages-to-attorneys' fees award ratio of only 27:1 — nearly half of the ratio awarded in *Cairns*. Even after summary judgment and after ATS abandoned some of its claims in closing argument, it asked the jury for an award of $14,336,036 and sought to treble that amount, for a total of $43,008,108. [Dkt. 337 at 1231-1235] Thus, the ratio of the damages requested at trial to the fees requested herein is about 4:1 before trebling or about 12:1 after trebling — both of which are still well within the reasonable range based on *Cairns* and the other Lanham Act cases it analyzed. *See, Cairns,* 292 F.3d at 1158-59; *see also* n. 26, s*upra*.  Redflex's fee request is reasonable.

---

[11] The *Cairns* court also found that the 14:1 ratio in *Cairns* was considerably lower than the ratios of fees awarded in other Lanham Act cases. *Id.* at 1158-59*,* citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1117 (5th Cir. 1991) (affirming an award of $937,550 in attorneys' fees to a party who had been awarded less than twice as much in damages, a ratio of about 2:1) and *Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 77 (2d Cir. 1986) (affirming attorneys' fees award of $1,142,545.70, which *exceeded the damages* by almost 150%).

DATED this 27th day of July, 2010.

                    GREENBERG TRAURIG, LLP

                    By: /s/ E. Jeffrey Walsh
                        E. Jeffrey Walsh
                        Robert A. Mandel
                        Frank G. Long
                        Stacey F. Gottlieb
                        *Attorneys for Defendant*
                        *Redflex Traffic Systems, Inc.*

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on July 27, 2010, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

    Randy J. McClanahan (randy@mmellp.com)
    Robert H. Espey, II  (bob@mmellp.com)

☒ I hereby certify that on July 27, 2010, I served the attached document by e-mail upon the following, who are registered participants of the CM/ECF System:

    Randy J. McClanahan (randy@mmellp.com)
    Robert H. Espey, II  (bob@mmellp.com)

☒ I hereby certify that on July 28, 2010, I will serve the attached document by First Class United States Mail upon the following:

    Randy J. McClanahan
    Robert H. Espey, II
    McClanahan Myers Espey, LLP
    3355 West Alabama, Suite 210
    Houston, Texas 77098
    *Attorneys for Plaintiff*

                        By: /s/ Patricia Berger
                             Employee, Greenberg Traurig, LLP

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000