Randy J. McClanahan; Texas State Bar No. 13391500; randy@mmellp.com
Michael D. Myers; Texas State Bar No. 00791331; mike@mmellp.com
Robert H. Espey, II; Texas State Bar No. 24007163; bob@mmellp.com
MCCLANAHAN • MYERS • ESPEY, L.L.P.
3355 West Alabama, Suite 210
Houston, TX 77098
Tel: (713) 223-2005
Fax: (713) 223-3664

*Attorneys for Plaintiff American Traffic Solutions, Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Traffic Solutions, Inc. | Case No. 2:08-cv-2051-FJM |
| Plaintiff, | |
| vs. | **AMERICAN TRAFFIC SOLUTIONS, INC.'S OPPOSITION TO REDFLEX'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS** |
| Redflex Traffic Systems, Inc., | |
| Defendants. | |

American Traffic Solutions, Inc. ("ATS") files this response to Redflex Traffic Systems, Inc.'s ("Redflex") Motion for Attorneys' Fees And Non-Taxable Costs and supporting Memorandum ("Redflex's Motion").[1]

**1.    Introduction.**

The essence of Redflex's Motion is its argument that "ATS pursued it claims knowing that it did not have a good basis for doing so."[2] This argument is contrary to

---

[1]    Docket Entries ("D.E.") 322, 343 & 344.  Redflex filed an amended Motion for Attorneys's Fees And Non-Taxable Costs.  D.E. 346.

[2]    Redflex's Motion, p. 1.

the record and disingenuous, in light of the subsequent suit Redflex brought against ATS.

Redflex's argument is contrary to the record because this Court found, in denying Redflex's motion for summary judgment, that there was evidence supporting each element of the claims that ATS brought in this case.[3] That evidence was presented at trial. The jury verdict in favor of Redflex does not change the fact that there were genuine issues of disputed facts. The purpose of fee shifting under the Lanham Act is not to punish parties who lose lawsuits, but to discourage groundless suits or suits brought in bad faith.[4]

There is no evidence of bad faith or any other misconduct on the part of ATS. In order to satisfy the heavy burden required for fee shifting under the Lanham Act, Redflex misquotes statements made during settlement discussions and misrepresents the record. Redflex also relies on overruled case law to support its argument.[5] In addition, this Court repeatedly chastised Redflex for motion practice that the Court

---

[3] April 22, 2010 Order, p. 5-11. D.E. 253. While the Court limited the number of jurisdictions at issue, the Court ruled that there was sufficient evidence to proceed on each legal theory. April 22, 2010 Order, p. 12. D.E. 253.

[4] *See Te-Ta-Ma Truth Foundation-Family Of Uri, Inc. v. The World Church Of The Creator*, 392 F.3d 248, 264 (7th Cir. 2004).

[5] Citing *Lorillard Tobacco Co., v. Engida*, 556 F.Supp.2d 1209, 1216 (D. Colo. 2008), Redflex argues that "surviving summary judgment" is not enough to avoid an award of attorneys' fees. Redflex's Motion, p. 11. That case did not involve a motion for summary judgment and the fee award was reversed on appeal. *Lorillard Tobacco Co. v. Engida*, ___ F.3d ___, 2010 WL 2700264 (10th Cir., July 09, 2010) (NO. 08-1037, 08-1334).

termed "abusive."[6]  After denying over ten motions filed by Redflex at the pretrial hearing, the Court stated:

> "I hate to think of what you're charging your clients for all of this.  But if I were your client, I wouldn't pay you."[7]

Without any significant effort to eliminate the abusive, erroneous, unnecessary, duplicative, or excessive time entries, Redflex asks this Court to order ATS to pay its attorneys' fees.  This is contrary to the Lanham Act and the Local Rules.

Finally, Redflex's motion is disingenuous because the arguments Redflex uses to attack the validity of ATS's claims here apply equally to the claims that Redflex is asserting in a separate Lanham Act suit against ATS.[8]  In that suit, currently pending before Judge Bolton, Redflex brought claims resting on the following propositions: (1) ATS's proposals for traffic enforcement contracts contain statements of fact made for the purpose of influencing the jurisdictions to buy goods and services; (2) ATS's proposals are advertisements and are disseminated sufficiently to the relevant purchasing public; (3) false statements in proposals likely deceived the jurisdictions and influenced the purchasing decisions of the jurisdictions; and (4) ATS's

---

[6]  January 5, 2010 Order, p. 1, (stating that "defendants filed their motion to take 25 depositions on December 31, 2009, just two weeks before the discovery cutoff date. This is both abusive and fails to take into consideration the sanctity of the Rule 16 scheduling order.") D.E. 181; April 30, 2010 Pre-Trial Hearing Transcript, p. 5.

[7]  April 30, 2010 Pre-Trial Hearing Transcript, p. 6.

[8]  Case No. 2:09-cv-02702-SRB; *Redflex Traffic Systems, Inc. v. American Traffic Systems, Inc.*; In the U. S. District Court for the District of Arizona, Phoenix Division (Exhibit A) ("Redflex's Complaint").

competitors are injured as a result of false statements.[9]  In its case, Redflex simply copied the factual predicate alleged by ATS in this case.  Redflex cannot now argue that claims based on that factual predicate are brought in bad faith.

### 2. Redflex has not shown it is entitled to recover fees or costs under the Lanham Act.

#### a. The legal standard.

Under the Lanham Act, the prevailing party may be awarded reasonable attorneys' fees only "in exceptional cases."[10]  The prevailing authority holds that Redflex bears the burden of demonstrating the exceptional nature of the case by clear and convincing evidence.[11]

The Ninth Circuit has construed the "exceptional" circumstances requirement narrowly and held that an exceptional case is only found where "a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith."[12]  Exceptional cases

---

[9] Redflex's Complaint, p. 5-15 (Exhibit A).

[10] 15 U.S.C. § 1117(a); *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000).

[11] *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 490 (5th Cir. 2004); *see also Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 402 (5th Cir. 2008); *Finance Investment Co. v. Geberit*, 165 F.3d 526, 533 (7th Cir. 1998) ("Although section 1117 generally operates as an expense-and-fee shifting statute for prevailing parties against infringers, it may in exceptional circumstances, and when proven by clear and convincing evidence, 'provide protection against unfounded suits brought by trademark owner for harassment and the like.'"); *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 1998 U.S.Dist. LEXIS 11268, at *3 (D. Or. Mar. 5, 1998).

[12] *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) (citing *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000)); *see also Horphag Research Ltd. v. Pellegrini,* 337 F.3d 1036, 1040 (9th Cir. 2003); *Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1156 (9th Cir. 2002).

*Opposition to motion for fees, page 4*

involve "culpable conduct" on the part of the losing party.[13]  In Lanham Act cases where the defendant is the prevailing party and seeks fees from the plaintiff, the inquiry "will necessarily center on the act of filing the lawsuit . . . ."[14]  Where, "notwithstanding a jury's verdict, there was a foundation" for a plaintiff's argument that the defendant was liable under the Lanham Act, an award of attorneys fees is not appropriate.[15]  Claims that raise colorable legal and factual issues do not warrant a fee shift under the Lanham Act.[16]  The Ninth Circuit has denied a prevailing defendant's fee application because the plaintiff's were not "frivolous or unreasonable."[17]

This stringent standard is also exemplified by cases concerning the award of attorneys' fees to a prevailing plaintiff.  In such cases, malicious, fraudulent, deliberate or willful conduct is required before a case is deemed exceptional.[18]  In

---

[13]  *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 230 (3d Cir. 2009).

[14]  *Id*.

[15]  *Id.*

[16]  *See Boney v. Boney Serv., Inc.*, 127 F.3d 821, 823, 827 (9th Cir. 1997) (granting summary judgment in favor of the defendant but denying the defendant's request for attorneys' fees because the plaintiff's claims raised "colorable legal and factual issues."); *see also Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 612 (7th Cir. 1986) (denying attorney's fees where opposing party's action was not frivolous and raised debatable issues).

[17]  *Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1217 (9th Cir. 2008).

[18]  *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005).

cases of willful conduct, the Ninth Circuit also requires "some aggravating circumstance or heightened level of culpability."[19]

A district court should examine the "objective merits" of a claim as a factor in determining whether the plaintiff filed suit in "bad faith."[20] Mere allegations of "dishonesty in discovery" are not sufficient to carry the clear and convincing burden required to warrant a fee shift.[21] Moreover, "a party has not acted in bad faith simply by predicating its legal claim on a controversial and unsettled legal theory."[22] Circuit courts have held that claims that are novel and expansive do not justify a fee award unless they are "so outlandish" or "so implausible as to necessitate an inference of bad faith."[23] Accordingly, fee shifts are generally not appropriate in unsettled areas of law.[24]

Circuit courts also have held that prevailing parties should not automatically seek fees under section 1117(a) simply because the other side has engaged in vigorous

---

[19] *See Invision Media Services, Inc. v. Glen J. Lerner*, 175 Fed. Appx. 904, 906 (9th Cir. 2006) (citing *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005) (whether case is exceptional is a question of law for the court and does not follow automatically from a jury finding of intentional infringement); *Gracie v. Gracie*, 217 F.3d 1060, 1068-69 (9th Cir. 2000) (jury finding of willfulness sufficient for court to find case exceptional where jury additionally found bad faith)).

[20] *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002).

[21] *See Robin Singh Educational Servs. Inc. v. Excel Test Prep.*, 291 Fed. Appx. 620, *2 (5th Cir. 2008).

[22] *Scott Fetzer*, 381 F.3d at 490.

[23] *Id.* at 490-91.

[24] *See Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008).

litigation.[25] "Litigation conduct must rise to the level of oppressive in order to justify declaring a case exceptional."[26] Aggressive litigation conduct undertaken in good faith and falling within the bounds of zealous advocacy does not warrant a fee award.[27] "Playing hard-by the rules-cannot suffice to make a case exceptional under § 1117(a)."[28]

### b. Redflex is not entitled to recover its attorneys' fees because ATS's claims were grounded in fact and law.

Contrary to Redflex's argument, there is evidence supporting ATS's claims that Redflex engaged in false advertising. The elements of ATS's false advertising claim are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.[29]

---

[25] *Te-Ta-Ma Truth Foundation-Family Of Uri, Inc. v. The World Church Of The Creator*, 392 F.3d 248, 264 (7th Cir. 2004).

[26] *Id*. (requiring, before a fee award is justified, an "oppressive suit," defined as "something that might be described not just as a losing suit but as a suit that had elements of an abuse of process, whether or not it had all the elements of the tort."); *see also S. Indus., Inc. v. Centra 2000, Inc.,* 249 F.3d 625, 627 (7th Cir. 2001).

[27] *Te-Ta-Ma Truth Foundation*, 392 F.3d at 264.

[28] *Id*.

[29] *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997).

ATS presented evidence supporting each of these elements.

ATS contends that Redflex's proposals contained statements that are actionable because Redflex literally and implicitly misrepresented its history of compliance with all laws.[30]  For example, in a proposal to the Arizona DPS, Redflex stated:

> As the largest operator of mobile speed units in the USA, including dozens of jurisdictions across 11 states, Redflex has successfully supported many different types of deployments from freeways to school zones to construction zones.
>
> In several deployments, the vans are currently utilized in both construction zones and on state highways and freeways.  Regardless of the specific deployment schedules, Redflex always works very closely with each partner jurisdiction to ensure full compliance with all specifications, regulations and statutory restrictions.[31]

ATS contends that this and other similar statements by Redflex were made to obtain business by convincing the consumer that Redflex has a history of "full compliance" with the applicable laws of "dozens of jurisdictions."[32]  On their face, these statements of compliance with laws are not limited to "post-award construction work and uniform traffic signal phasing and timing regulations" as now suggested by Redflex.[33]

There is no dispute that the radars used by Redflex prior to August 11, 2008 were not FCC-certified.[34]  And there is no dispute that it was illegal for Redflex to market or use those radars without FCC certification.[35]  Redflex's officers testified

---

[30]   Contrary to Redflex's argument, each of the proposals at issue described Redflex's use of radar in mobile speed enforcement systems. *See, e.g.*, PX-77, p. ATS52546/ATS52563; PX-121, p. ATS00555; PX-171, p. Redflex0152040; PX-26, p. RF-001-003551; PX-29, p. ATS054078; PX-36, p. RF-001-001122; PX-46, p. ATS052035; PX-52, p. ATS052177 & ATS052182.

[31]   PX 77, p. ATS052587.

that they intended that the recipients of the proposals would understand that Redflex would comply 100 percent with all laws.[36]  Redflex's officers also testified that Redflex intended that each jurisdiction would rely upon those statements in awarding the contracts.[37]

Redflex focuses its argument on the jurisdictions for which this Court granted summary judgment, while ignoring the claims that the Court ordered to trial. However, the dismissed claims are also colorable under existing law. The Lanham Act prohibits false advertising even when the intended audience is a government agency using public procurement methods.[38]  For example, in *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, the Federal Circuit allowed a public contract bidder to

---

[32]   PX-77, p. ATS052587; PX-121, p. ATS00449; PX-171, p. REDFLEX 0152032; PX-26, p. RF-001-003495; PX-29, p. ATS054079/ATS054104; PX-36, p. RF-001-001144; PX-46, p. ATS052140; PX-52, p. ATS052277; PX-55, p. ATS052491/ATS052418; PX-109, p. RF-001-000338; PX-142, p. RF-001-000017.

[33]   Redflex's Motion, p. 12.

[34]   DX-1251; Testimony of Charlie Carpinteri, Trial Tr. 5/19/10, p. 326, l. 13-20; Testimony of Karen Finley, Trial Transcript 5/20/10, p. 620, l. 13-16.

[35]   DX-1251.

[36]   *See e.g.*, Testimony of Aaron Rosenberg, Trial Tr. 05/25/10, p. 866, l. 8-11.

[37]   *See e.g.*, Testimony of Aaron Rosenberg, Trial Tr. 05/25/10, p. 866, l. 12-14.

[38]   *See e.g., Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 125-26 (3d Cir. 2005) (deciding a Lanham Act claim involving advertisements sent to government architects to persuade them to specify a competitor's products for use in government projects).

pursue a Lanham Act claim.[39]  Significantly, the Federal Circuit concluded that the fact that the plaintiff was the third-place bidder did not preclude its claim.[40]  In this case, ATS pursued jurisdictions where ATS, or an entity that ATS acquired, placed the second bid.[41]  Accordingly, even the dismissed claims are colorable under the Lanham Act.

A claim is not groundless when there is evidence of the basic elements of a Lanham Act claim.[42]  The evidence at trial, and this Court's Summary Judgment Order, show that ATS's Lanham Act claims are grounded in fact and law. Accordingly, Redflex falls far short of showing by clearing and convincing evidence that ATS's claims were groundless or unreasonable.

### c. ATS's claims were not brought in bad faith and there is no evidence suggesting otherwise.

The only evidence specifically identified by Redflex in its section captioned "ATS's case was brought in bad faith" is the Rule 30(b)(6) testimony of Adam Tuton.[43]  Redflex argues now, as it did during trial, that ATS did not disclose the

---

[39] *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 987-88 (Fed. Cir. 2006)

[40] *Id*.

[41] Testimony of James Tuton, Trial Tr. 05/19/10, p. 292, l. 5-12; p. 294, l. 9-17, p. 318, l. 15-24, p. 320, l. 4-23.

[42] *Societe Civile Succession Richard Guino v. Renoir et al.*, 305 Fed. Appx. 334, 338 (9th Cir. 2008).

[43] Redflex's Motion, p. 12-13.

statements that ATS contended were false.[44]  After reviewing the disclosures and the record in this case, the Court overruled Redflex's objections.[45]  The record shows that ATS consistently complied with its discovery obligations.[46]

Redflex implies other matters that demonstrate bad faith.  Redflex mentions what it describes as its "vigorous" efforts to conduct additional depositions and ATS's efforts to oppose them.[47]  Redflex fails to acknowledge that Redflex agreed to the scheduling order that, consistent with the federal rules, limited each side to ten depositions.  Redflex also fails to acknowledge that it waited until two weeks before close of discovery and the due date of ATS's summary judgment response before seeking an additional fifteen depositions.  This Court held that Redflex's motion was abusive and denied it.[48]  This is no evidence of bad faith on the part of ATS.[49]

---

[44]   Trial Tr. 05/19/10, p. 222, l. 16 – p. 226, l. 16.

[45]   Trial Tr. 05/19/10, p. 229, l. 8 - 10.

[46]   ATS properly responded to Redflex's discovery by producing responsive documents.  In 65 remarkably expansive requests for production, Redflex sought a great deal of discovery regarding contracts that ATS obtained, including Seattle.  The voluminous responses by ATS demonstrate ATS's cooperation, not discovery misconduct.  Also, ATS properly identified the jurisdictions as required by the federal rules.  *See* January 5, 2010 Order, p. 1.

[47]   Redflex's Motion, p. 6.

[48]   January 5, 2010 Order, p. 1, D.E. 181.

[49]   Redflex also implies that ATS's use of Dr. Ingberman was in bad faith.  However, the witnesses at trial, including experts, were driven in large part by the Court's schedule.  ATS's retention of a damages expert, even one not called at trial, is not evidence of bad faith.

Redflex also misquotes ATS's general counsel in an effort to intimate bad faith. During settlement negotiations, ATS's general counsel stated that ATS understood that there was a risk that the number of jurisdictions at issue could be limited by the Court's summary judgment ruling.[50] This statement does not suggest bad faith. To the contrary, the settlement negotiations resulted in an agreement in principal between CEO of ATS and Redflex.[51] That agreement was not consummated because Redflex's board did not accept the recommendation of its Chief Executive Officer.[52] As demonstrated by ATS's willingness to enter into a settlement agreement, Redflex understood that ATS was willing to compromise and Redflex's corporate existence was not at stake.[53]

### d.  ATS's claims are not vexatious.

During trial, Redflex argued that it would have been proper for ATS to file a separate administrative action for each jurisdiction at issue. ATS, in contrast, sought to have its disputes resolved in one forum, in one proceeding.

Redflex's evidence that this suit is vexatious is: 1) that ATS issued a press release; 2) the fact that ATS filed a state court action related to the administrative

---

[50]  Declaration of George Hittner (Exhibit B).

[51]  Declaration of George Hittner (Exhibit B).

[52]  Declaration of George Hittner (Exhibit B).

[53]  Redflex's general counsel admitted during settlement discussions that it brought the second case to help force a settlement of this suit and to lower Redflex's payout if the jury returned a verdict against it. This statement shows that Redflex understood that ATS's claims were grounded in fact and law. (Exhibit B).

proceeding; 3) that ATS subsequently withdrew its bid protest; 4) that ATS wrote letters complaining to the FCC; and 5) that ATS voluntarily dismissed its claims against two of Redflex's executives, Karen Finley and Aaron Rosenberg.[54]

The press releases issued by ATS are not a "crusade" and are no evidence that this suit was filed without cause. To the contrary, the press releases accurately show that ATS was concerned that its principal competitor was using illegal radar to obtain business.[55] There is no evidence that ATS instituted any proceeding without cause or improperly withdrew from any proceeding. And as this Court held, the administrative matters involved different issues.[56] The merit to the letters ATS sent to the FCC is demonstrated by the consent decree that Redflex entered into with the FCC.

ATS's voluntary dismissal of Finley and Rosenberg, prior to Redflex seeking any specific relief on their part, demonstrates that ATS's conduct was not vexatious. Nor was any economic coercion present here. According to the testimony of Redflex's officers during trial, Redflex continued to successfully operate and its business grew during the litigation.[57] Redflex has failed to point to any evidence, much less clear and convincing evidence, showing that ATS's claims were vexatious.

**e.   Non-taxable costs are not recoverable under 15 U.S.C. § 1117(a).**

---

[54]   Redflex's Motion, p. 11-12.

[55]   Exhibit 6 attached to Redflex's Motion.

[56]   April 22, 2010 Order, p. 6. D.E. 253. Redflex did not plead the defense of failure to exhaust administrative remedies.

[57]   Testimony of Karen Finley, Trial Tr. 5/20/10, p. 620, l. 5 – 12.

*Opposition to motion for fees, page 13*

As Redflex concedes, this Court has previously held that non-taxable costs are not recoverable under 15 U.S.C. § 1117(a).[58] And while Redflex disagrees with the Court, it provides no authority showing that this Court erred.[59] The Ninth Circuit, relying upon Supreme Court authority, has permitted the recovery of costs only where expressly authorized by statute.[60] Therefore, this Court should deny Redflex's motion for non-taxable costs.

### 3. Redflex's fees and costs are not reasonable and Redflex has not complied with L.R. 54.2.

#### a. Redflex is not entitled to recover its fees under L.R. 54.2.

Redflex's Motion fails to provide an accurate and consistent accounting of its time records and attorneys' fees. Redflex's attorney, Mr. Walsh, testifies that Redflex seeks to recover for over 12,782 hours. Yet Redflex's Exhibits indicate that documentation is provided for only 3,533.5 hours.[61]

---

[58] Redflex's Motion, p. 4. *See BBQ Hut, Inc., v. Maelin Enterprises, L.L.C.*, No. CV-06-2050-PHX-FJM , 2008 WL 2687685, at * 4 (D. Ariz. July 3, 2008)).

[59] Redflex's principal authority is an unpublished district court opinion that does not provide any analysis of the appropriateness of awarding costs under the Lanham Act. Redflex's Motion, p. 5 (citing *Hickory Favors, Inc. v. Snackmasters,* No. 05 C 4551, 2008 WL 4542961 at *10, 13 (N.D. Ill. Apr. 2, 2007)). Redflex cites no circuit court authority in support of its argument.

[60] *Twentieth Century Fox Film Corp. v. Entm't Distrib.,* 429 F.3d 869, 884-85 (9th Cir.2005) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987)).

[61] See Attachment E to Redflex's Motion, p. 249.

Redflex failed to comply with the mandatory requirements of L.R. 54.2(e) to provide task-based itemized statement of attorneys' fees.[62] For example, some entries fail to identify the timekeeper and simply state: "Various Paralegals."[63] Other entries provide no identification of tasks performed.[64] Redflex provided block billing throughout its time records. When it does provide task-based, itemized entries, the time is frequently less than the total amount of time claimed.[65]

Redflex failed to eliminate "unnecessary, duplicative and excessive time."[66] It also included time spent on a matter involving class action allegations.[67] Redflex included duplicative and inefficient time involving numerous billing professionals. It further did not account for the discount that it provided.[68]

---

[62] Time entries that do not comply with L.R. 54.2 are highlighted yellow on Exhibit C. Time entries for work that the Court has termed "abusive" or that the Court has indicated were not necessary are highlighted orange. Time entries for Redflex's claims against ATS that are asserted in a separate lawsuit or unrelated matters are highlighted green. The page numbers for Exhibit C refer to the numbers at the bottom of the page.

[63] *See* Exhibit C, p. 75.

[64] *See e.g.*, Exhibit C, p. 62 (providing only "#" marks in the task description).

[65] *See e.g.*, Exhibit C, p. 46, 49, 58, 81, 83, 108, & 142.

[66] See Exhibit C detailing unnecessary, duplicative and excessive time involving numerous billing professionals.

[67] See Exhibit C, p. 7, detailing time apparently spent as "receive and review order on motion to dismiss class action."

[68] Redflex's Motion, p. 16 (stating that Redflex offered a ten percent discount for timely payment). The time entries show no discount for any amount.

### b. Redflex's fees are not reasonable.

Redflex contested every element of every claim, including ATS's assertion that the contracts at issue here affected interstate commerce. Where a party unnecessarily increases the fees sought by "contesting practically every issue," a fee award is not proper.[69] Moreover, Redflex engaged in a motion practice that this Court termed "abusive." An award of fees for "abusive" conduct is also improper.[62]

### c. Redflex failed to make any effort to segregate its non-Lanham Act claim fees as required by the Ninth Circuit.

As a general matter, "a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham Act claims."[70] Here the time records submitted identify certain claims that were worked on.[71] The fees associated with the tort claims should not be allowed.

The Ninth Circuit has held:

> the impossibility of making an *exact* apportionment [between recoverable Lanham Act claims and non-recoverable non-Lanham Act claims] does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment.[72]

This is true even where the plaintiff's claims involve a "common core of facts" and are based on "related legal theories."[73] Contrary to Redflex's argument, ATS argued

---

[69] *JCW Investments, Inc. v. Novelty, Inc*., 482 F.3d 910920 (7th Cir. 2007).

[70] *Gracie v. Gracie,* 217 F.3d 1060, 1069 (9th Cir.2000).

[71] *See e.g*., Exhibit C, p. 101 (identifying time spent on the tort claims).

[72] *Cairns v. Franklin Mint Company*, 292 F.3d 1139, 1157 (9th Cir. 2002) (citing *Gracie,* 217 F.3d at 1070).

[73] *Id.*

its tort claims during closing and pursued them to a verdict. Redflex was required to make "some attempt" to adjust the fees sought, including using a percentage reduction by the number of claims asserted.[74]

### d. Redflex's costs are not reasonable.

Redflex has not demonstrated that its costs are reasonable.[75] Redflex has not provided detail sufficient to identify the "research" it seeks to recover.[76] Likewise, Redflex has provided no back-up or insufficient detail for $127,933.79 of the $219,070.04 it seeks to recover under the category "Electronic Discovery, Litigation and Trial Technology."[77] Remarkably, in that category, Redflex apparently seeks to recover for software it bought, computers it rented, and for training people received.[78] Redflex also seeks to recover "Misc. Costs" without providing any back-up for $8,749.37 of the $10,312.02 claimed.[79]

---

[74] Because the Lanham Act claim was one of three claims, the fee application would be reduced by 2/3, according to one methodology approved by the Ninth Circuit. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158-59 (9th Cir. 2002).

[75] Redflex suggests that its appeal of the Clerk's award of taxable costs is included in its motion. Accordingly, ATS incorporates its opposition to the award of those costs here.

[76] Redflex's Motion, Docket Entry 343-5, pps. 4-20.

[77] *See* Exhibit D.  Charges highlighted in green have *no* back-up.  Items highlighted in pink contain no detail of the charges claimed.

[78] Redflex's Motion, Docket Entry 343-6, pps, 14-24, 38-42, 44-45.

[79] Redflex's Motion, Docket Entry 343-8, pps. 2-15.

### 4. Prayer.

For the foregoing reasons, ATS requests that the Court deny Redflex's motion for attorneys' fees and costs in its entirety.

Respectfully submitted this 16th day of August, 2010.

>MCCLANAHAN • MYERS • ESPEY, L.L.P.
>
>By /s/ Randy J. McClanahan
>Randy J. McClanahan
>Texas State Bar No. 13391500
>Michael D. Myers
>Texas State Bar No. 00791331
>Robert H. Espey, II
>Texas State Bar No. 24007163
>3355 West Alabama, Suite 210
>Houston, TX 77098
>Tel: (713) 223-2005
>Fax: (713) 223-3664
>*Attorneys for American Traffic Solutions, Inc.*

### CERTIFICATE OF SERVICE

This motion is served by electronic filing to all counsel of record on this 16th day of August, 2010.

>_____/s/ Randy J. McClanahan