**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

E. Jeffrey Walsh, WalshJ@gtlaw.com, SBN 009334
Robert A. Mandel, MandelR@gtlaw.com, SBN 022936
*Attorneys for Defendant Redflex Traffic Systems, Inc.*

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ARIZONA

| | |
|---|---|
| AMERICAN TRAFFIC SOLUTIONS, INC., <br><br> *Plaintiff*, <br><br> vs. <br><br> REDFLEX TRAFFIC SYSTEMS, INC., <br><br> *Defendant*. | Case No. 2:08-CV-02051-PHX-FJM <br><br> **REPLY IN FURTHER SUPPORT OF REDFLEX'S AMENDED MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS** <br><br> (Assigned to the Honorable Frederick J. Martone) |

ATS' contention that this false advertising action falls outside the ambit of the fee-and-cost-shifting provision embodied in Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), comes as no surprise. While Redflex had no reasonable alternative but to expend millions of dollars in attorneys' fees and costs to defend itself against ATS' 36 claims of false advertising, for which it sought a staggering $100 million in purported damages, ATS spent little if anything to have its Texas-based trial attorneys, working under a contingency fee arrangement, unleash and prosecute this litigation juggernaut for nearly two years. Naturally, ATS would prefer that the legal fees associated with this case remain apportioned between the parties in the same lopsided manner forever. But a plaintiff who brings a groundless, unreasonable or vexatious false advertising action such as this one, or who otherwise pursues such an action in bad faith, does so at its own peril in the Ninth Circuit. ATS must reap what it has sewn.

Nothing in ATS' adulterated recitation of the applicable legal standard, which misleadingly draws from inapposite Third and Fifth Circuit precedent to advance the proposition that Redflex was required to prove "bad faith" in order to obtain a fee award, can help ATS evade the consequences of its ill-fated decision to prosecute this vacuous case. Those decisions are well recognized to be entirely at odds with the Ninth Circuit's settled jurisprudence in this arena (as well as the jurisprudence of

most of the other federal circuit courts of appeal). Nor does ATS' fanciful presentation of the record, which attempts to cast Redflex as the antagonist in this debacle,[1] rather than as the victim of what was nothing less than an anticompetitive initiative to bring Redflex to its knees, to dispossess it of its contracts and customers, and to destroy its reputation in the marketplace, lend support to ATS' position that fee-shifting is unwarranted here.

Even less persuasive, if that is possible, is ATS' hackneyed effort to portray its 36 claims of false advertising as meritorious. For ATS to take that position in spite of the Court's summary dismissal of no fewer than 25 of those claims on the uncontroversial basis that ATS never competed for those service contracts and therefore lacked standing to bring the claims in the first place is peculiar in and of itself. When one also factors into the analysis the Court's keen observations at the conclusion of ATS' case-in-chief that ATS' lawsuit is "at best … extraordinarily weak on every level," that ATS's evidence of damages is "pitifully inadequate" and that ATS has "no case," ATS' abrupt abandonment of two of the remaining eleven claims during its counsel's closing argument for lack of "proof," *and* the jury's unanimous rejection of the nine remaining claims at the end of the trial, ATS' attempt at this post-judgment stage of the case to cloak its trumped up claims with the appearance of merit is nothing short of mystifying.

The bottom line is this: Ninth Circuit precedent incontestably confers on the district courts the authority to award the prevailing Lanham Act defendant its reasonable attorneys' fees and costs where the record reveals any *one* of four exceptional circumstances -- *i.e.*, that the action was either *groundless*, *unreasonable* or *vexatious*, or that it was pursued in *bad faith*. And the record in this case demonstrates all four of those circumstances. Among the most egregious examples is ATS' failure to conduct any factual investigation whatsoever prior to commencing this suit to evaluate whether it subsequently could prove at least three of the critical elements of its 36 false advertising claims – namely, materiality, deception, and causation. Nor did ATS take discovery of any of the 36 governmental entities that awarded their contracts to Redflex, the only potential source of the

---

[1] For example, ATS asserts at page 3 of its Opposition that the Court's remark of April 30, 2010 regarding fees was directed at Redflex exclusively. In fact, the Court addressed its remark to both parties, each of whom had submitted motions that were denied at that hearing.

- 2 -

evidence necessary to establish those three elements. Any one of the aforementioned circumstances, standing alone, is sufficient to find this action either groundless, unreasonable or vexatious, irrespective of ATS' motive.

But ATS' failure to consider whether its action had any evidentiary grounding is just the tip of the iceberg. ATS also failed to conduct any legal investigation prior to the time Redflex filed its motion for summary judgment to evaluate whether it had prudential standing to pursue the vast majority of its false advertising claims in the first place. Had it researched the controlling precedent prior to bringing suit, ATS would have discerned that its failure to compete for most of the photo traffic enforcement service contracts at issue deprived it of standing to sue Redflex about those contracts under the Lanham Act. ATS likewise failed to conduct any legal investigation to evaluate whether Redflex's distribution of its proposals to the 36 governmental entities could satisfy the "sufficient dissemination" element of its claims where the universe of potential consumers of these services consists of thousands of governmental entities spread throughout the United States alone, as Karen Finley, Redflex's CEO, testified at trial. Again, irrespective of ATS' motive, any one of these circumstances is sufficient to find this action either groundless, unreasonable or vexatious.

As if the aforementioned circumstances were not extraordinary enough, the record also reeks of bad faith on the part of ATS. Without repeating all of the examples set forth in Redflex's opening memorandum of points and authorities, suffice it to reiterate here that ATS deliberately impeded the search for truth at every turn in this proceeding, vehemently opposing, for instance, Redflex's efforts to take the depositions of the jurisdictional witnesses, undertaking no effort on its own to take their depositions or even to obtain their affidavits, and presenting none of these witnesses at trial. Yet the Court cautioned ATS early in the case and again at the beginning of the trial that it could not as a matter of law establish three of the critical elements of its false advertising claims -- materiality, deception and causation -- without the testimony of each jurisdiction's procurement officer, because ATS' representatives were incompetent to provide admissible evidence on those points.

The record is susceptible to only one reasonable inference: ATS not only had no case, but knew that it had no case. Instead, ATS offered this Court, and ultimately the trier of fact, nothing

more than empty promises that it could not -- indeed, that it never intended -- to fulfill. Even the alleged false statements about legal compliance upon which ATS predicated this lawsuit, when reviewed in the context of Redflex's proposals, as the law requires, turned out either to be true or non-actionable. And although he disavows the statement today, George Hittner, ATS' General Counsel, admitted to Andrejs Bunkse in the wake of the Court's summary judgment ruling that ATS "always knew" that its false advertising action, whether in whole or in part, would not withstand summary judgment scrutiny. *See* Exhibit 1, Declaration of Redflex General Counsel Andrejs Bunkse in Further Support of Redflex's Motion for Attorneys' Fees.

In the end, ATS made no genuine effort to present a false advertising case to the jury. Instead, ATS wagered that the jury, if sufficiently incensed about Redflex's purported use of mobile radar that lacked FCC-approval, would gloss over the dearth of evidence proffered to substantiate the legal elements of its purported false advertising claims and render a windfall damages award against Redflex merely as punishment for its alleged use of "illegal radar." ATS accordingly spared no effort to incense the jury about the FCC issue, while ignoring the elements of its claims. To its credit, the jury was far too sophisticated to fall victim to ATS' ploy. Redflex's motion should be granted.

## I.    REDFLEX IS ENTITLED TO THE RELIEF IT SEEKS.

The U.S. Court of Appeals for the Ninth Circuit instructed in *Stephen W. Boney, Inc. v. Boney Serv. Inc.*, that a Lanham Act case is "extraordinary" within the meaning of 15 U.S.C. § 1117(a) where the case is either groundless, unreasonable or vexatious, or otherwise pursued in bad faith. 127 F.3d 821, 827 (9th Cir. 1997). ATS, although it pays lip service to that standard, predicates its response chiefly on the contention that Redflex is required, but has failed, to prove that ATS prosecuted this false advertising case in bad faith. Opposition at pp. 2 ("There is no evidence of bad faith or any other misconduct on the part of ATS."), 4-5 ("Exceptional cases involve 'culpable conduct' on the part of the losing party."), 6 ("A district court should examine the 'objective merits' of a claim as a factor in determining whether the plaintiff filed suit in 'bad faith.'"). But thirteen years have passed since the Ninth Circuit rejected the "bad faith" standard to which prevailing defendants previously had been subjected when attempting to recover their attorneys' fees in Lanham Act cases,

opting instead for the less restrictive standard articulated above, which is to be applied to prevailing plaintiffs and defendants alike.

While ATS cites generously to Third and Fifth Circuit precedent throughout its response memorandum to support its argument that a prevailing defendant, to recover its fees and costs, remains obligated to demonstrate that the plaintiff pursued its Lanham Act claims in bad faith, Opposition at pp. 4 (footnote 11), 5 (footnotes 13, 14 and 15) and 6 (footnotes 20, 21, 22 and 23), those decisions are inapposite, as the legal standard in the Third and Fifth Circuits for what constitutes an "exceptional" case still requires a showing of bad faith and therefore differs materially from most of the other circuits, including the Ninth Circuit. Thus, ATS' reliance on Third and Fifth Circuit decisions as the basis for its argument that "bad faith" remains the litmus test for a fee award under the Lanham Act is entirely misplaced. The Fifth Circuit's much stricter standard for fee-shifting under the Lanham Act also casts doubt on ATS' contention that a prevailing defendant must demonstrate the exceptionality of the case by "clear and convincing" evidence in order to recover its fees. ATS points to no Ninth Circuit decision wherein that heightened evidentiary burden was placed on a prevailing Lanham Act defendant in the context of a fee application. Nor has Redflex's research revealed any such decision in the Ninth Circuit.

Even if the law in the Ninth Circuit were otherwise, the record "clearly and convincingly" demonstrates not only that this case is groundless, unreasonable or vexatious, but also that ATS pursued this case in "bad faith." It is simply beyond cavil that ATS had a responsibility to investigate whether its false advertising claims had merit, not only upon filing suit, but throughout the entire litigation process, and especially after the Court's admonitions throughout this case that ATS could not prevail without propounding evidence to prove, *inter alia*, that Redflex's purported advertisements were material to the decision-making of the governmental entities, that those entities were deceived by the purported falsehoods, and that the deception caused the governmental entities to award their respective contracts to Redflex rather than ATS. ATS deliberately disregarded the Court's admonitions, let alone the controlling precedent. In fact, ATS impeded the search for truth on these very elements of a false advertising claim under the Lanham Act, and thereafter walked into the

courtroom on the first day of trial knowing that it had no evidence to propound in support of them.

U.S. District Judge Wright's recent opinion in *Spalding Labs, Inc. v. Arizona Biological Control, Inc.*, 2008 WL 2227501 (C.D. Cal May 29, 2008) presents analogous circumstances. Awarding the prevailing Lanham Act defendant its reasonable attorneys' fees in that false advertising case, Judge Wright observed as follows:

> Spalding had the responsibility to consider its case and determine whether it had merit, not only upon filing suit, but throughout the entire litigation process, but especially after the Court's November 16, 2007 order [on several in limine motions that served to exclude evidence that the plaintiff intended to propound in support of its false advertising claims]. It did not do so. Accordingly, this case, while perhaps not initially "exceptional," became so when Spalding continued to pursue its false advertising claim after knowing it no longer had sufficient evidence to prevail.

*Id.* at 2. (citing numerous authorities). Here, the circumstances were even more onerous than in *Spalding Labs*, as ATS never had any evidence to propound in support of several of the legal elements of its 36 false advertising claims and also had failed to conduct an appropriate legal investigation. In other words, this case was "exceptional" from the outset.

ATS' contention that the survival of eleven of its 36 false advertising claims until trial automatically forecloses any finding that this action is groundless, unreasonable or vexatious – a tacit acknowledgement of the Ninth Circuit standard – is unpersuasive as well. The mere fact that this Court allowed one-third of ATS' claims of false advertising to proceed to trial, rather than summarily dismissing them as it did with respect to the other 25 claims, hardly constitutes a basis for denying Redflex's fee application. Notably, ATS points to no decisional law endorsing the proposition that a denial of a Lanham Act defendant's summary judgment motion forecloses a subsequent finding that the case is "exceptional" within the meaning of the Lanham Act. And ATS fails to direct the Court to several decisions rejecting that notion out of hand. *E.g.*, *Vital Pharm., Inc. v. Am. Body Building Prod's, LLC*, 510 F.Supp.2d 1043, 1048 (S.D. Fl. 2007) (awarding fees to prevailing Lanham Act defendant: "[o]ther courts agree that prevailing at the summary judgment stage does not automatically allow a party to escape a fee award."); *IMAF, S.p.A. v. J.C. Penney Co.*, 810 F.Supp. 96, 99 (S.D.N.Y. 1992) ("[T]he fact that plaintiff" survived a summary judgment motion and

- 6 -

"managed to bring these claims to trial is of little relevance as a general principle.").[2]

Beyond that, ATS propounds no rebuttal to Redflex's argument that the summary dismissal of 25 of the 36 claims – fully two-thirds of ATS's entire case – on grounds that ATS lacked prudential standing to bring any claim as to any service contract for which it did not compete with Redflex, a non-controversial point of law if there ever was one, demonstrates just how groundless, unreasonable or vexatious this action was. Where a Lanham Act defendant has prevailed on summary judgment, federal courts have not hesitated to award the defendant its reasonable attorneys' fees. *E.g., Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir. 2003) (vacating and remanding denial of attorney's fees to prevailing Lanham Act defendant upon summary judgment); *Viola Sportswear, Inc. v. Mimun*, 574 F.Supp. 619, 620-621 (E.D.N.Y. 1983). Thus, at a minimum, Redflex is entitled to all of the fees and non-taxable expenses incurred up to and including the Court's summary judgment order.

Nor is there any merit to ATS' contention that Redflex's "motion is disingenuous" because, as ATS would have this Court believe, Redflex's affirmative complaint against ATS asserted the same species of claims in its false advertising complaint against ATS that Redflex characterizes as unmeritorious in the instant case. Even a cursory examination of Redflex's complaint reveals that the subject matter of its false advertising claims is much broader than a few proposals to a handful of governmental entities. ATS engaged in a worldwide comparative advertising campaign, implemented through a variety of media, including its website, to deceive consumers of its traffic enforcement services. That ATS happened to employ proposals as part of that overarching scheme does not render the two cases equivalent in any respect.

ATS's contends next that Redflex may not recover the fees associated with defending against its tortious interference and unjust enrichment claims is without merit. ATS predicated those state law claims on the same factual allegations as its false advertising claims. In all events, Redflex's litigation team did not devote any material amount of time to those claims, save for the few hours required to

---

[2]  ATS accuses Redflex of relying on overruled precedent to support its position. However, the Tenth Circuit reversed *Lorillard Tobacco Co. v. Engida*, 556 F.Supp.2d 1209 (D. Colo. 2008) on grounds that a fee award was unwarranted under Colorado's statutory fee-shifting provision.

1  prepare the corresponding jury instructions and the two corresponding paragraphs of its summary
2  judgment motion.
3       Finally, ATS suggests that Redflex has propounded no authority for its position that the
4  Lanham Act contemplates an award of non-taxable costs in addition to fees.  Redflex cites several
5  cases in support of that position, in addition to the language of the statute itself.

## II. REDFLEX HAS COMPLIED WITH THE REQUIREMENTS OF LR CIV. 54.2.

Redflex supports its fee application with affidavits, schedules and exhibits reflecting the efforts undertaken by its victorious litigation team in enormous detail.  Redflex's Attorneys' Fee Detail alone (Attachment E to its original Fee Application) is comprised of approximately 8,000 individual time entries (set forth in more than 3,000 rows) spanning a period of nearly two years.  While Redflex's attorneys expended substantial effort to generate a complete and accurate accounting of the fees and costs that Redflex incurred in this proceeding, the notion that such an enormous undertaking will yield schedules that are 100% devoid of flaws is simply unrealistic in a case of this magnitude and complexity.

ATS, in an effort to decrease the amount of fees and costs it must pay as the non-prevailing party if this Court finds this case "exceptional" within the meaning of the Lanham Act, goes to great lengths to attack Redflex's Attorneys' Fees Detail, while contending that Redflex did not provide enough documentation to support its claims for certain non-taxable costs.  The majority of ATS's gripes are either entirely unwarranted, or otherwise exaggerated, while others are valid and require adjustments in Redflex's schedules as well as to the quantum of fees and costs requested.  Redflex, in an effort to address ATS' criticisms in an efficient manner, appends to this Reply an Amended Attachment E (Exhibit 2), an Amended Attachment F1-Costs, Research (Exhibit 3), together with additional documentary support attached as Exhibits 4 and 5.

For ease of reference, Redflex has incorporated into Amended Attachment E has a column on the far right that identifies each of ATS's various categories of criticism and the manner in which Redflex's has addressed the issue.  The purpose of Amended Attachment E is to clarify and fix any entries that should be revised or removed.  With thousands of individual time entries, Redflex

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

- 8 -

recognizes that some adjustments are necessary, and has removed many entries altogether, in many instances simply to bring this matter to an end rather than expend still more precious resources. Below is a short explanation of the most pertinent categories of criticism and Redflex's response.

**Miscalculation of Hours.** ATS correctly observes that the final tally of hours that appears at the end of Redflex's original Attachment E was 3,533.5 hours, while Mr. Walsh attests in his affidavit that the fees that Redflex seeks to recover embraced 12,782 hours of work.[3] Both of these references to hours are incorrect. The original total should have been 13,651.6. The discrepancy is attributable to an error in the formulaic settings of the Excel spreadsheet that were used to calculate the quantity of hours expended. Thus, while the hours expended by each attorney and paraprofessional on each day for each task were properly reflected on Redflex's original Attachment E, the number depicted in the final tally of hours at the end of that attachment did not properly update to account for all the individual time entries. As shown in Amended Attachment E, at the bottom of the Hours column, the sum that Excel computed was only for a few of the rows instead of *all* of the rows. Amended Attachment E provides the correct calculation and shows the comparison between the incorrect and correct formula in Excel. The correct number of hours, after adjustments discussed below, is 12,438.7 for a total of $3,055,770.11 in attorneys' fees.

**State Law Claims.** Of the 5,417 entries provided in Attachments E and F1-F6 (3,002 rows in Redflex's Attachment E, Attorneys' Fees Detail and 2,415 rows in Attachments F1-F6, Nontaxable Costs), there were only ten entries that specifically listed work related to ATS' unjust enrichment and tortious interference claims. (See Amended Attachment E, rows with Non-Lanham Act ("NLA") in far right column). Not surprisingly, seven of those ten entries also reflect that the work performed related to the Lanham Act claims as well. Thus, in sum, only three out of the 5.417, or .055 %, entries relate to work performed solely to defend Redflex against ATS's non-Lanham Act claims.

**Time shown is less than time sought.** ATS greatly exaggerates the magnitude of this issue. Excel limits the amount of characters that can appear in each individual cell of a spreadsheet. It is for this reason that the sub-entries in a handful of cells on Redflex's original Attachment E may not have

---

[3] One individual time entry in the original Attachment E overbilled by one hour and has been fixed. *See* Amended Attachment E.

appeared to coincide with the total time entry for that particular day. Amended Attachment E resolves this technical glitch by providing all of the content and ensuring correct calculation. Further, ATS is mistaken in its argument that Redflex did not deduct from its application the 10% discount that it afforded Redflex, as mentioned in the Affidavit of E. Jeffrey Walsh. Redflex filed Defendant's Amended Motion for Attorneys' Fees and Non-Taxable Costs [Dkt. 346] to account for that discount.

**Block billing.** ATS correctly observes that some of the members of Redflex's litigation team engaged from time to time in what is commonly referred to as "block billing" -- that is, while they itemized each task performed on a given day, they did not apportion a specific amount of time to each task. This issue implicates Local Rule 54.2(e)(1)(B), which instructs that the itemized statement for legal services must contain "[t]he time devoted to each individual **unrelated** task performed on such day." (emphasis added) Redflex's investigation of this issue confirms that, for the most part, where an individual timekeeper block billed, the constituent tasks were in fact related, such that Redflex's itemized statement complies with the local rule. However, in some instances, Redflex simply cannot determine whether or not the itemized tasks within the same entry are related. To avoid further controversy about this issue, Redflex omits all such entries from its request for fees, as shown in Amended Attachment E, and has recomputed the hours accordingly. By omitting such entries, Redflex reduces its fee request by $317,730.61.

**Unrelated matters.** ATS propounds no support for its contentions that some time entries are unrelated to the case. Of those entries it claims pertain to unrelated matters, there are 27 entries dedicated to working on "counterclaims." Although Redflex ultimately did not file a counterclaim in this case, the analysis its attorneys performed in examining prospective counterclaims yielded crucial information that Redflex used to develop its defenses to ATS' false advertising claims. For instance, when Redflex discredited James Tuton, ATS' chief witness at trial, regarding ATS' own misrepresentations in its business practices, it relied heavily on the work performed in developing potential counterclaims for this suit.

**Unnecessary, duplicative, excessive billing.** Mr. Walsh attests in his supporting affidavit that Redflex necessarily performed the tasks for which attorneys' fees are sought. Prior to submission

- 10 -

of its fee application, Redflex removed time entries that, in Mr. Walsh's professional judgment, may have been considered duplicative or excessive. ATS' oblique assertion that certain tasks performed by Redflex's legal team were "unnecessary, duplicative, and excessive" is unsubstantiated.

**Insufficient detail.** ATS complains that Redflex's time entries contain insufficient detail. Again, ATS greatly exaggerates this issue, or otherwise misunderstands the time entry. For example, Redflex redacted some of the entries to omit privileged information. Nonetheless, Redflex acknowledges that it inadvertently omitted some non-privileged detail relating some of the fee and cost entries for which it seeks reimbursement. With respect to fees, Amended Attachment E now includes the omitted detail, and specifies where privileged information was redacted. With regard to the costs (and some fees), Redflex provides additional documents to show the origin of the detailed descriptions added. *See* Exhibit 5. However, if Redflex could not locate documentation to back up the entries, it has completely removed those entries from its request.

**Lee Davis paralegals.** Some of the entries for temporary paralegals hired through Lee Davis & Associates were inadvertently merged together in Attachment E, showing a large amount of time billed in a single entry. Amended Attachment E remedies this issue by separating the paralegals' time, pursuant to their individual time sheets and invoices attached hereto as Exhibit 4.

**Electronic Discovery, Litigation & Trial Technology Services Costs.** ATS complains that there is not ample back-up or detail for the entries listed in Redflex's Attachment F2, Electronic Discovery, Litigation & Trial Technology Services Costs. This accusation has no merit. Redflex provided the invoices for external vendors with its original filing. Any entries without matching invoices constitute the internal resources of Redflex's litigation team and descriptions of tasks are listed in great detail. No further back-up or detail is required.

In summary, Redflex, in a good faith effort to address any meritorious criticisms that ATS raised in its Opposition, hereby reduces its fee request from $3,374,330.72 to $3,055,770.11. Redflex also reduced its non-taxable costs request from $681,682.22 to $679,511.41.

RESPECTFULLY SUBMITTED this 2nd day of September, 2010.

       GREENBERG TAURIG, LLP


      By: <u>/s/ Robert A. Mandel</u>
        E. Jeffrey Walsh
        Robert A. Mandel

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on September 2, 2010, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

    Randy J. McClanahan (randy@mmellp.com)
    Robert H. Espey, II  (bob@mmellp.com)

☒ I hereby certify that on September 2, 2010, I served the attached document by e-mail upon the following, who are registered participants of the CM/ECF System:

    Randy J. McClanahan (randy@mmellp.com)
    Robert H. Espey, II  (bob@mmellp.com)

☐ I hereby certify that on September 2, 2010, I served the attached document by First Class United States Mail upon the following:

    Randy J. McClanahan
    Robert H. Espey, II
    McClanahan Myers Espey, LLP
    3355 West Alabama, Suite 210
    Houston, Texas 77098
    *Attorneys for Plaintiff*

    By: /s/ Marian Mackey
        Employee, Greenberg Traurig, LLP

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000